LEANDER B. FABER, as Receiver in Supplementary Proceedings of PATRICK H. FLYNN, Appellant, v. THE CITY OF NEW YORK, Respondent.

Building contract — construction of provisions of contract for erection of foundation for piers of bridge over a river — held that under such contract and the reference thereto in the specifications the contractor may recover for excavations in bedrock which through errors of the engineers were not shown in plans and specifications but which the contractor was required to make — interest — when not allowed on unliquidated claim.

1. Under a contract for constructing foundations to the East River bridge the contractor agreed to complete the work for a fixed sum in accordance with certain plans and specifications. The specifications state that the detailed plans accompany them and are complement and part thereof. Similar references are made to the plans in the

advertisement for proposals and in the proposals themselves. Through an error on the part of the engineers employed by the city the bedrock was several feet nearer the surface than represented on the plan, resulting in the necessity for the excavation of a very considerable additional amount of rock, to recover for which this action is brought. *Held,* that the references to the plan were sufficient to show that the contract was made by both parties upon the understanding and with the supposition that the bedrock was substantially as therein indicated, and it would be inequitable under such circumstances to hold that the defendant was not responsible for the additional expense incurred by reason of the mistake. It follows that plaintiff is entitled to recover such damages as he sustained by the breach of the contract.

2. Provisions in the contract and specifications make the engineer arbiter with regard to the work done under the contract and require his certificate for work so done before the contractor is entitled to payment. These provisions do not have reference to such a claim as the present which is not for work done under the contract, but for damages for the breach thereof. For the same reasons the release executed by the contractors to the city is not a defense. (*People ex rel. Cranford Co.* v. *Willcox,* 207 N. Y. 743, followed.)

3. If a claim for damages represents a pecuniary loss, which may be ascertained with reasonable certainty as of a fixed day, then interest is allowed from that day. The test is not whether the demand is liquidated, but whether a party could have determined what was due, either by computations alone or by computation in connection with the established market values, or other generally recognized standards. In the case at bar the amount of rock excavated was subject to computation but the evidence does not show that this work had an established value. Hence, interest cannot be allowed.

*Faber* v. *City of New York,* 177 App. Div. 906, reversed.

(Argued December 12, 1917; decided January 8, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 14, 1917, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term after a verdict had been rendered fixing the value of the work for which recovery was sought.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Craig* and *James A. Foley* for appellant. The plaintiff is clearly entitled to recover damages to the extent that they resulted from errors or misrepresentations in contract plan No. 63. (*Horgan.* v. *Mayor, etc.,* 160 N. Y. 516; *Gearty* v. *Mayor, etc.,* 171 N. Y. 61; *Langley* v. *Rouss,* 185 N. Y. 201; *Borough Construction Co.* v. *City of New York,* 200 N. Y. 149; *Dunn* v. *City of New York,* 205 N. Y. 342; *Sundstrom* v. *State of New York,* 213 N. Y. 68; *Beckwith* v. *City of New York,* 210 N. Y. 530; 148 App. Div. 658; *Lentilhon* v. *City of New York,* 185 N. Y. 549; 102 App. Div. 548; *People ex rel. Powers & M. Co.* v. *Schneider,* 191 N. Y. 523; 124 App. Div. 916; *Uvalde Asphalt Paving Co.* v. *City of New York,* 154 App. Div. 112; 211 N. Y. 560; *Mulholland* v. *Mayor, etc.,* 113 N. Y. 631; *McCann* v. *City of Albany,* 11 App. Div. 378; *Dwyer* v. *Mayor, etc.,* 77 App. Div. 224; *Ryan* v. *City of New York,* 159 App. Div. 105; *United States* v. *Gibbons,* 109 U. S. 200.) The release does not affect the plaintiff's right to recover. (*Horgan* v. *Mayor, etc.,* 160 N. Y. 516; *Gearty* v. *Mayor, etc.,* 171 N. Y. 61; *Langley* v. *Rouss,* 185 N. Y. 201; *Borough Construction Co.* v. *City of New York,* 200 N. Y. 149; *Sundstrom* v. *State of New York,* 213 N. Y. 68; *Beckwith* v. *City of New York,* 148 App. Div. 658; 210 N. Y. 630; *Ryan* v. *City of New York,* 159 App. Div. 105; *Uvalde Asphalt Paving Co.* v. *City of New York,* 154 App. Div. 112; 211 N. Y. 560.) Plaintiff is entitled to interest. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 114 N. Y. 331; *Adams* v. *Fort Plain Bank,* 36 N. Y. 255; *Martin* v. *Silliman,* 53 N. Y. 615; *McCollum* v. *Seward,* 62 N. Y. 316; *Robbins* v. *Carll,* 93 N. Y. 656; *De Carricarti* v. *Blanco,* 121 N. Y. 230; *Gray* v. *Central Railroad of New Jersey,* 157 N. Y. 483; *Sweeny* v. *City of New York,* 173 N. Y. 414; *O'Keefe* v. *City of New York,* 176 N. Y. 297; *Simon* v. *Etgen,* 213 N. Y. 589; *Roebling's Sons Co.* v. *City of New York,*

110 App. Div. 366; *Kervin* v. *Utter*, 120 App. Div. 610; *Bradley* v. *McDonald*, 157 App. Div. 572; 218 N. Y. 351.)

*Lamar Hardy, Corporation Counsel (John F. O'Brien, Terence Farley, R. Percy Chittenden* and *John F. Collins* of counsel), for respondent. The commissioners did not warrant the amount of rock to be excavated or the location of rock " suitable in the opinion of the engineer for a foundation." (*Dunn* v. *City of New York*, 205 N. Y. 243; *Sullivan* v. *Sing Sing*, 122 N. Y. 389; *Dean* v. *Mayor, etc.*, 167 N. Y. 13; *Lentilhon* v. *City of New York*, 102 App. Div. 548; *Long* v. *Inhabitants of Athol*, 196 Mass. 597.)

ANDREWS, J. On October 28, 1896, the commissioners of the new East river bridge entered into a contract with Patrick H. Flynn for constructing the foundations of the New York tower of the bridge. The contractor agreed to complete the work in accordance with certain plans and specifications. One of the plans so mentioned was No. 63, which showed details of the piers. The contractor was to receive for the completed work described in the contract and shown by the plans and specifications, the sum of $367,000—such being in full for all labor and materials in case the excavation was carried down to the depth shown by such plans. The specifications state that the detailed plans accompany them and are complement and part thereof. Similar references are made to the plans in the advertisement for proposals and in the proposals themselves.

Taking these papers together they seem to indicate that it was the understanding, both of the commissioners and of the contractor, that the excavation was designed to be carried down substantially to bedrock. The twentieth specification, for instance, provides that each caisson must be sunk to the depth shown on the plans or to such depth as shall be required for a firm foundation

for the towers. The bedrock is to be cleaned off for the whole area of the caisson. Unsound and unsuitable rock must be removed and rock of a sound and satisfactory character laid bare. If necessary the surface of the rock shall be stepped. Concrete is not to be laid until the rock surface has been examined and approved in writing by the engineer. The twenty-first specification provides for the mixing of the concrete used to fill the working chamber and that it shall be placed in immediate contact with a clean sound bedrock. The sixty-fourth specification provides that bids are based upon depth of excavation indicated on the plans. The commissioners will hereafter direct the additional depth of excavation to be made into the rock. If excavation deeper than that shown on the plans is required it is to be paid for at so much per cubic yard.

Another indication that this was the understanding is that the south caisson is represented on plan 63 as somewhat deeper than the north caisson. The only explanation of this discrepancy is that the solid bedrock lay at a lower level to the south than to the north.

More important than all, however, are the indications on plan 63 itself. There the rock surface is plainly indicated and the caissons are sunk substantially to this surface.

Under such circumstances Mr. Flynn executed the contract in question. In the course of his work, however, it was discovered that through some error on the part of the engineers employed by the commission who had prepared plan 63, the bedrock was from eight to nine feet nearer the surface than represented upon the plan.

The caissons as designed by the engineer were somewhat larger than the stone foundations of the towers which rested upon them. As a result at the top there was a shoulder projecting some five feet. They were situated under water in the East river and reached beyond the

pierhead line. To avoid creating an obstacle to navigation, it was necessary that the shoulder should be about 38 feet beneath the surface of mean high water. This was impossible, if, placing the bottom of the caisson on the rock surface as it actually existed, the height was still left as designed on the plan. Therefore, as the height of the caisson could not be shortened after the discovery was made so as to keep its top at the appropriate depth beneath the surface of the water, the contractor was compelled by the commissioners to excavate into the rock until the bottom of the caisson was the depth beneath the surface originally contemplated. This required the excavation of 2,274 cubic yards of solid rock, and the jury has found that the reasonable value of that work was $79,590.

The action was tried upon the theory that a recovery was sought for a breach of contract on the ground that this work was not covered thereby or contemplated therein, and the question is whether, under the admitted facts, plan 63 constituted such a representation or warranty as to the position of the bedrock as to bind the city and render it liable for the great additional cost caused by the mistake.

We have no doubt that it is such a representation. Clearly, the references to this plan contained in all the papers before us was sufficient to show that the contract was made by both parties upon the understanding and with the supposition that the bedrock was substantially as therein indicated. It would be wholly inequitable to hold that under such circumstances where the contractor had no reasonable opportunity of discovering the truth, and where the other party had made the examination and asked for bids upon plans showing the results of such examination, the latter can be heard to say that it is not responsible, should those plans wholly misrepresent the facts. (*Langley* v. *Rouss*, 185 N. Y. 201.)

The respondent calls attention to the fourth paragraph of the specifications. That provides that " the contractor must assume the responsibility for the difficulties encountered in sinking the foundations to bedrock or into it to whatever depth shall be determined upon. The contractor may have access for information only to the results of borings which have been made by the commissioners at or near the locations of the piers." As to the second of these sentences the borings referred to show the condition of the alluvial deposits above the bedrock, and have no bearing upon the question before us. As to the first sentence it refers to two different conditions. The contractor is to assume the responsibility for difficulties encountered in reaching bedrock. This refers to the contract if performed strictly according to the plans, which, as we have seen, contemplated excavation only to the rock. If, for any reason, further excavation was required, and if they deemed best the commissioners had the right to order it, the contractor was to receive so much per cubic yard. This was extra work, and if such extra work was ordered, he was then to assume responsibility also for any difficulties he might encounter.

Other provisions in the contract and specifications make the engineer arbiter with regard to the work done under the contract and require his certificate for work so done before the contractor is entitled to payment. These provisions do not have reference to such a claim as the present which is not for work under the contract, but for damages for its breach. (*Borough Construction Co.* v. *City of New York*, 200 N. Y. 149; *Gearty* v. *Mayor, etc., of N. Y.*, 171 N. Y. 61.)

For the same reasons the release executed by the contractor to the city is not a defense. (*Gearty* v. *Mayor, etc., of N. Y., supra.*)

The appellant argues that he is entitled to interest on the amount found by the jury to be the value of the rock

excavations from the date of the presentation of the claim to the comptroller — May 26, 1904. Whether this be so or not is a matter of law. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331.)

It is said that the amount of work done by the contractor was easily ascertainable by the defendant and was not in dispute. It merely involved a mathematical calculation. So too the value of such work depended on prevailing prices with which the commissioners must have been familiar. This claim was for $159,180. The jury allowed $79,590.

The question of the allowance of interest on unliquidated damages has been a difficult one. The rule on this subject has been in evolution. To-day, however, it may be said that if a claim for damages represents a pecuniary loss, which may be ascertained with reasonable certainty as of a fixed day, then interest is allowed from that day. The test is not whether the demand is liquidated. Was the plaintiff entitled to a certain sum? Should the defendant have paid it? Could the latter have determined what was due, either by computations alone or by computation in connection with established market values, or other generally recognized standards? (*Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *McMahon* v. *N. Y. & Erie R. R. Co.*, 20 N. Y. 463; *Gray* v. *Central R. R. Co. of N. J.*, 157 N. Y. 483.)

In the case at bar the amount of rock excavated was subject to computation. But the evidence does not show that this work had an established market value. (*Gray* v. *Central R. R. Co. of N. J., supra*.) For the plaintiff two experts, basing their testimony on elaborate calculations, gave their opinion as to the fair and reasonable value of the work. So did experts for the defendant. It is true one of the latter was asked by the court the market value of such work and gave an answer, but this is far from establishing the necessary fact. The discrepancy between

the claim and the amount allowed indicates the difficulty. In a somewhat similar case we have refused to allow interest. (*People ex rel. Cranford Co.* v. *Willcox,* 207 N. Y. 743.)

We, therefore, hold that the plaintiff is entitled to recover of the defendant such damages as he sustained by the breach of this contract, but without interest. As the jury has fixed such damages, as the case contains all exceptions to the evidence raised by the appellant, as none of them are material, there is no reason why a new trial should be ordered.

The judgment of the Appellate Division and of the Trial Term should be reversed, and judgment for the plaintiff should be directed for the sum of $79,590, with interest thereon from March 27, 1916, with costs in all the courts.

HISCOCK, Ch. J., CHASE, COLLIN, CARDOZO and CRANE, JJ., concur; HOGAN, J., concurs in result.

Judgment accordingly.