The Foundation Company, Respondent, v. The State of New York, Appellant.

Third Department, November 10, 1920.

Canals — contract with State for construction of bridged-type dam for barge canal purposes construed — when contractor not entitled to recover extra compensation.

Action against the State of New York brought in the Court of Claims by a contractor to recover additional compensation for constructing a bridged-type dam for barge canal purposes. The contractor having been paid in full pursuant to the terms of his contract claims additional compensation on the theory that he was obliged to excavate to a greater depth than that required by the contract and that he was compelled to do additional pumping owing to alleged changes made by the State. in the construction of coffer dams. It appeared that while the contractor was required to place foundations upon bed rock it was impossible to determine with absolute certainty where such rock would be found, but that the State, as required by law, had made test borings and estimated the depth of excavation, which facts were known to the contractor, so that each party in making the contract acted upon the same information. The contract stated that the estimate of quantities was approximate only and bidders for the work were required to form their own judgment as to the quantities and character of the work by personal examination upon the ground where the work was to be done, and it was expressly provided that contractors were barred from pleading misunderstanding because of estimates of quantities, etc. The contract expressly stated that the contractor has satisfied himself by his own investigation regarding all conditions affecting the work to be done and that he shall make no claim against the State because of any estimates, tests or representations affecting the work made by the State which might prove to be in any respect erroneous. The Constitution provides that no extra compensation shall be made to any contractor but that the contract may be canceled upon application of the contractor, if it proves to be unjust and oppressive, while the Barge Canal Law provides that no change of plan or specification which shall increase the expense of such work or create a claim against the State shall be made except in writing with the assent of the Canal Board. In the present case the Canal Board required that the work should be done by the plaintiff according to the terms of the contract.

Held, that as the plaintiff neglected to make proper tests and investigations as to the amount of work necessary to fulfill the contract, but relied upon the estimates made by the State, it cannot recover extra compensation, the State not being liable therefor under the law and by the express terms of the contract.

*Held further,* that there could be no extra compensation for pumping done by the plaintiff, as the manner of construction was agreed to by the division engineer at the request of the contractor and no official action was taken by the Canal Board with reference to such change.

APPEAL by the defendant, The State of New York, from a judgment of the Court of Claims in favor of the claimant, entered in the office of the clerk of said court on the 27th day of August, 1919.

*Charles D. Newton, Attorney-General* [*J. L. Cheney* with him on the brief; *Carey D. Davie* of counsel], for the appellant.

*Edwin D. Worcester* and *John Godfrey Saxe,* for the respondent.

JOHN M. KELLOGG, P. J.:

The plaintiff constructed, upon a unit price contract, a bridged-type dam in the Mohawk river at Scotia for barge canal purposes, with a lock at one end. The defendant has paid in full for the work actually performed, according to the terms of the contract, but upon the settlement the plaintiff claimed certain additional or other compensation, which, by an understanding between the parties, resulted in the filing of this claim. By the judgment under review the plaintiff has recovered judgment for $73,689.21, of which $11,417 represents additional cost of the work below elevation 148 and the balance is an allowance of $62,272.21 for pumping from the coffer dams at the lock over and above the contract price of fifteen cents per 1,000,000 foot gallon. The first item was allowed upon the theory that both parties to the contract contemplated that the excavation and work were not to go below elevation 148 and the payment of the additional pumping was allowed upon the theory that the contract contemplated that the lock should be constructed in one coffer dam, while changes made by the State required the use of several coffer dams, thus increasing the cost.

The contract required the plaintiff to put its work upon bed rock in the river bottom for which it was to receive twenty-one dollars per cubic yard down to elevation 148 and for all work below elevation 148 the rate was to be twenty-five dollars per cubic yard. It is manifest that neither party to the contract could know with absolute certainty where bed rock would be

found. As required by law, the defendant made reasonable investigation to ascertain that fact and made several borings with a wash drill, the result of which satisfied its representatives that bed rock was at or near elevation 148 and in estimating quantities it added a certain per cent for uncertainties and marked as a contingency 200 cubic yards for work below that elevation. The investigation was made with reasonable skill and in entire good faith. The boring sheet, the borings and all data and information acquired by the officials were duly filed and were open to the inspection of bidders before the contract was made, and were examined so far as it desired by plaintiff. No information was withheld. There were no concealments or subterfuges. It was known that test drillings by the State had been made with a wash drill and that the result of such drilling is not always satisfactory, as it cannot be told whether the drill has reached rock or a boulder. The diamond drill would furnish more accurate information, but the wash drill is generally used for such purposes. It is evident, however, that both parties considered there was an uncertainty as to where bed rock was, otherwise the contingent item referred to would not have been in its contract. By the drill sheet the nearest drilling to the point now under consideration showed that " rock or boulder " was found at elevation 155.7. The plaintiff did not ask to examine the borings, although they were available. The State based its estimate as to where rock bottom was upon the information which was placed by it before the bidders. Each party acted upon the same information. In sinking the first caisson it was discovered that bed rock was some distance below elevation 148 and test drillings were made by the State and claimant with a diamond drill with the result that a hard pan bottom was found at an elevation upon which the other caissons were permitted to rest and the first caisson was permitted to rest upon hard pan bottom, although some distance below elevation 148. Five hundred and fifty-six and two-tenths cubic yards of work were done below elevation 148 from which the court deducted 230 yards, leaving a balance of 326.2 cubic yards for which it gave an additional compensation of thirty-five dollars per cubic yard over the contract price (twenty-five dollars) which had already been paid.

The contract provided: " The estimate of quantities is to be accepted as approximate only, proposers being required to form their own judgment as to quantities and character of the work by personal examination upon the ground where the work is proposed to be done; and on the specifications and drawings relating thereto, or by such other means as they shall choose.

" The attention of persons intending to make proposals is specifically called to paragraph ten [evidently eleven] of the form of contract, which debars a contractor from pleading misunderstanding or deception, because of estimates of quantities, character, location or other information exhibited by the State."

Paragraph 11 is as follows: " The contractor agrees that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed, and that his conclusion to execute this contract is based on such investigation and research, and not on the estimate of the quantities or other information prepared by the State Engineer, and that he shall make no claim against the State because any of the estimates, tests, or representations of any kind affecting the work made by any officer or agent of the State, may prove to be in any respect erroneous."

These provisions and the contract itself must be read in connection with section 9 of article 7 of the Constitution, which provides as follows: "All contracts for work or materials on any canal shall be made with the persons who shall offer to do or provide the same at the lowest price, with adequate security for their performance. No extra compensation shall be made to any contractor; but if, from any unforeseen cause, the terms of any contract shall prove to be unjust and oppressive, the Canal Board may, upon the application of the contractor, cancel such contract," and the following provision of section 6 of the Barge Canal Law (Laws of 1903, chap. 147, as amd. by Laws of 1911, chap. 736): " No change of plan or specification which will increase the expense of any such work or create any claim against the State for damage arising therefrom shall be made unless a written statement, setting forth the object of the change, its character, amount and the expense thereof, is

submitted to the Canal Board, and their assent thereto at a meeting when the State Engineer was present is obtained. No extra or unspecified work shall be certified for payment unless said work is done pursuant to the written order of the State Engineer and payment therefor shall not be made unless approved by the Canal Board."

Section 7 of that act provides, in substance, that if it becomes apparent in the conduct of the work that any item will exceed in quantity the engineer's estimate by more than fifteen per cent, the engineer shall certify that fact to the Canal Board, which shall determine whether the excess work shall be completed by the contractor under the terms and at the prices specified in the contract or whether it shall be done by the Superintendent of Public Works or by special contract. In this case the requirement was made by the Canal Board and the State Engineer that the work should be done by plaintiff according to the terms of the contract.

The plaintiff had ample time in which to make the proper tests and investigations of the site and the condition under which the work was to be performed. Evidently the examination made by it was simply perfunctory. It did not choose to incur the expense of making a proper examination or was not properly advised upon the subject by its engineer. It is not in a position to claim that the State has done it any actionable wrong. It preferred not to incur the expense of a scientific examination of the river bottom but agreed to take its chances as to the correctness of the estimate furnished and it must abide by that decision. Under the law governing contracts of this kind and the express terms of the contract, the defendant is not liable. (*Matter of Semper* v. *Duffey,* 227 N. Y. 151; *Simpson* v. *United States,* 172 U. S. 372; *Leary* v. *City of Watervliet,* 222 N. Y. 337.)

In *Sundstrom* v. *State of New York* (213 N. Y. 68) the plaintiff's contract work was interfered with by water leaking through the canal because of its lack of repairs and its defective condition; in other words, by the negligence of the State, and it was held that the plaintiff was not required to guard against the State's negligence and that he could recover the extra cost of its work.

The contract there was quite similar to the one we are

considering and the court makes it plain that the plaintiff thereby assumed any unforeseen condition; that if the leaks had not come from the canal the extra cost must be borne by plaintiff, or, if it had come from the canal, but had not resulted from the carelessness of the State, a like result would follow.

In *Faber* v. *City of New York* (222 N. Y. 255) the plaintiff recovered upon the ground that there was an express warranty.

In *Christie* v. *United States* (237 U. S. 234) recovery was permitted upon the ground that the representatives of the government falsely stated that the material to be excavated, so far as known, was shown by the borings and drillings which might be seen in the office. The borings exhibited were not a correct showing of the conditions found. Buried logs and stumps were found by the drilling which were not disclosed by the borings exhibited.

The contract and the specifications are silent as to the number of coffer dams to be built; that was a matter left to the judgment and discretion of the contractor and to the satisfaction of the State Engineer. The lock was to be constructed next to the old Erie canal which was at an elevation of about twenty-five feet above it and the contract provided that the work must be done so as not to interfere with the navigation of the canal, giving the Superintendent of Public Works the right to require such precautions as may be necessary to insure its safety.

At the request of the claimant and upon the theory that wooden sheet piling would be more economical and in fact better, an alteration of the contract was duly made permitting that change and for additional concrete, the unit price to remain the same. This alteration contemplated an additional cost to the State of $76,768.15. The plaintiff submitted drawings of the proposed coffer dam which, in substance, made five separate coffer dams for the accomplishment of the work as proposed in the contract. Evidently the contract contemplated that the whole work should be surrounded by sheet piling, but as to the number of coffer dams which were to be used within the inclosure the contracts and the papers connected with it are silent.

When the plaintiff began work upon the lock it was discovered by the Superintendent of Public Works that it had overloaded the space between the towpath and the new lock and had excavated, to ease the driving of the wooden piling, to such an extent that the canal was being undermined and was in danger and he stopped the work. Thereupon considerable correspondence and several interviews took place between the official and the plaintiff with the result that the second alteration of the contract was duly made. It adopted and carried out the suggestions made by the plaintiff as to the best manner of doing the work. The alteration order provided that instead of the use of sheet piling at the southerly side of the southerly lock wall the foundation for that wall should be pneumatic caissons. It states the reason for the change is that the contractors have found unexpected and most serious difficulties in driving the sheet piling and in their efforts to relieve these difficulties they have dredged material from the lock site to such an extent as to undermine the north slope of the bank supporting the canal; that the situation to some extent had endangered the safety of the present canal. The order increased the estimated cost of the work to the State $102,136.20 and provided that the prices to be paid by the State and received by the plaintiff as full compensation for all items of work done and materials used are the same per unit of measure as those already fixed by the contract. The plaintiff proceeded to perform the work without protest, except that after the work was substantially performed as to the pumping, it requested that the price therefor should be increased, which was refused. It was known by both parties that the sand, gravel and earth at the location of the proposed lock was saturated with water and presented unusual difficulties and that a prior contractor in attempting to build a lock at the place had been unable to surmount these difficulties. It is manifest that the improper manner in which plaintiff began the work at the lock in violation of the spirit of the contract was undermining the old canal and putting it in great danger, and the changes in the plan of the work were caused by the improper manner in which the plaintiff was conducting the work and were made at its suggestions. The work was done and substantially completed without objection upon plaintiff's

part. The claim for extra compensation for pumping is one for extra work or for extra compensation over the agreed price for specified work and is in violation of the law and of the contract between the parties. A great part of the pumping was from eight cribs (each a separate coffer dam) on the north wall of the lock. The plaintiff asked to be allowed to build that part of the wall in that manner and the division engineer approved only of the method proposed. No official action was taken by the Canal Board with reference to it, but the work as done was paid for at the unit price of the contract. No liability can arise from these facts. The evidence of the witness Stickney as to his understanding about the coffer dams was incompetent and may be disregarded. The contract speaks for itself.

The judgment should be reversed and the claim dismissed, with costs.

All concur.

Judgment reversed and claim dismissed, with costs.