FRED E. GROSS & SON, a Domestic Corporation, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

## (Claim No. 15236.)

Fourth Department, November 11, 1925.

State — claims against — action by highway contractor to recover for breach of warranty and of contract — counterclaim under Highway Law, § 132, based on cost of completion after plaintiff abandoned contract — State represented erroneously location of sandstone — contractor agreed not to hold State responsible for mistakes of that kind — contractor cannot rely on such statement — findings that State did not violate partial payment clause are sustained by evidence — Court of Claims has jurisdiction under Court of Claims Act, § 12, to award affirmative judgment on counterclaim — State cannot recover on counterclaim because of failure to show amount expended in completion of road — jurisdiction is not lost on counterclaim on dismissal of claimant's claim — case remitted to Court of Claims for new trial on counterclaim.

In an action by a highway contractor to recover damages for alleged breach of warranty by the State and for breach of the contract based on the failure of the State to make partial payments as agreed, in which the State interposes a counterclaim under section 132 of the Highway Law based on the extra cost of completing the road after the contractor had abandoned his contract, a breach of warranty is not shown by evidence that the State erroneously represented to the contractor that a sandstone ledge existed near the highway, for such representation was not fraudulently made and the error was easily discoverable, and furthermore, since the contractor agreed that it would not hold the State liable for representations of that kind and stipulated that it had examined the location prior to the signing of the contract, it cannot now rely upon the misstatement.

The findings that the State did not violate that part of the contract providing for partial payments to the contractor as the work progressed are sustained by the evidence.

The Court of Claims has, under section 12 of the Court of Claims Act, jurisdiction to award an affirmative judgment on a counterclaim interposed by the State.

The State cannot recover on its counterclaim, however, since the counterclaim was based on the extra cost of completing the contract abandoned by the contractor, and the State did not show by evidence the extra cost of completion of the road, which it could not do, for at the time of the trial the road had not been completed. The State could not rely on the completion contract to fix the extra cost, since that contract was based on unit prices and the extra cost could not be ascertained until the contract was actually completed.

Furthermore, an alteration was made in the road after the work was taken up under the completion contract and there is no evidence by the State as to the effect of that alteration.

While the Court of Claims would not have had original jurisdiction of the cause of action stated in the counterclaim, still jurisdiction is not lost in this case by

an affirmance of the judgment dismissing the claim, and, therefore, the case is affirmed so far as it dismisses the claim and is reversed and remitted to the Court of Claims for a new trial as to the counterclaim.

APPEAL by the claimant, Fred E. Gross & Son, from a judgment of the Court of Claims of the State of New York in favor of the defendant, entered in the office of the clerk of said court on the 6th day of January, 1923, dismissing the claim of the claimant and granting judgment upon a counterclaim.

*John C. Wait [Frederick W. Newton* of counsel], for the appellant.

*Albert Ottinger, Attorney-General [James Gibson, Deputy Attorney-General,* of counsel], for the respondent.

SEARS, J.:

In the summer of 1915 the claimant was the successful bidder for the construction of the Barnes Corners-West Lowville Highway, No. 1300, part 2, in Lewis county. The contract for the work was dated July 22, 1915. The claimant soon entered upon the construction of the highway and in May or the early part of June, 1916, discontinued work on the contract claiming that it was justified in so doing and is entitled to damages for two reasons, *first,* because of a breach of warranty on the State's part, and *second,* because of failure on the part of the State to make partial payments for work done as required by the contract. After the claimant abandoned the work on the contract, the State, contending that the claimant had abandoned the work without cause, on or about May 4, 1917, in accordance with the terms of the contract and with the provisions of section 132 of the Highway Law (as amd. by Laws of 1913, chap. 517),* canceled claimant's contract, readvertised and relet the contract in relation to the balance of the work, to the Dale Engineering Company at unit prices, the aggregate amount of which based on approximate estimates exceeded the corresponding aggregate amount contained in the claimant's contract by $46,450.38, for which sum the State has recovered judgment against the claimant upon a counterclaim. In respect to the counterclaim the claimant contends, *first,* that the Court of Claims has no jurisdiction to award an affirmative judgment on a cause of action in favor of the State against the claimant; *second,* that the amount of any possible claim which the State may have against the claimant depends upon the actual cost to the State of doing the work, and this has not been shown because (a) the work was not fully completed at the time of the hearing and no evidence was given as to the State's payments on the Dale

---

* Since amd. by Laws of 1918, chap. 413, and Laws of 1924, chap. 412.— [REP.

Engineering Company's contract; (b) the gross sum bid in the Dale contract was only approximate and based on estimates of quantity and the amount which the State will have to pay upon the Dale contract is to be determined by the actual quantities of work and material furnished, inaccuracies in the estimates being subject to correction, and (c) the work done by the Dale Company was not the same as that contracted to be done by the claimant for the reason that during the progress of the work by the Dale Company a change was made by the State in the alignment of the road and no proof has been given as to the effect of this change on the cost of the work.

On sheet No. 4, furnished by the State and attached to the specifications at the time that claimant's bid was made, there was a legend entitled " location of materials." Among other locations of materials there is mentioned a sandstone " ledge " stated to be situated one-third of a mile from station 226. The proposal of claimant contained the following statement: " The undersigned also hereby declare that he has or they have carefully examined the plans, specifications, form of contract, and that he has or they have personally inspected the actual location of the work together with the local sources of supply; has or have satisfied himself or themselves as to all the quantities and conditions and understands that in signing this proposal he or they waive all right to plead any misunderstanding regarding the same." The specifications including the sheet with the legend of location of materials were made a part of the contract which was entered into upon the acceptance of the bid. The contract contained the following language: " The contractor further agrees that he is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, and that his information was secured by personal investigation and research and not from the estimates of the State Commission of Highways; and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State." Before making the bid and entering into the contract the officers of the claimant made no inspection of the location of the road or its surroundings and did not even go to Lewis county, although its secretary did go over the estimates and plans with a man interested in selling road-making machinery, who had some general but no particular knowledge of the locality where the work was to be done.

The claimant first discovered between May 12 and May 20, 1916, that no sandstone ledge existed at the place indicated. A letter from the claimant to the division engineer of the Highway

Department, dated May 26, 1916, contained the following sentences: " On sheet No. 4 of the contract plans the information is set forth that ledge or quarry sandstone will be found at station 226 within one-third of a mile from the road. In making up my bid for this work, this information was assumed to be correct. Upon examination of the ground, known as the vicinity station 226, I find no evidence of any ledge sandstone, and I am further advised by a resident within that locality that they know of no such stone in that vicinity."

As a matter of fact no sandstone ledge existed in the vicinity of the work.

The error is conceded by the State. It has been found to have occurred through a change in the numbering of the stations on the highway when the highway was subdivided for the letting of the contracts, and a failure to notice that the station 226 near which a ledge was situated was not the same as station 226 referred to in claimant's contract, but was a station on an entirely different part of the highway not included in claimant's contract.

There was confusion and mistake unquestionably. Mistakes and blunders of this kind do and will occur, and the Court of Claims has found that the mistake was an honest mistake, and we discover no error of law or fact in this finding.

The law applicable to this situation is briefly stated in *Foundation Co.* v. *State of New York* (233 N. Y. 177): " A contract and specifications may contain representations as to existing physical conditions. If so, a bidder may rely upon them, even though it be provided that he shall satisfy himself by personal inspection and investigation as to their truth, where because of time or situation such investigation would be unavailing (*Faber* v. *City of New York*, 222 N. Y. 255); or statements may be made on which the bidder, because of the language of the contract, cannot rely. He may have agreed that he will not. Then if they are made in good faith he takes the risk of their accuracy." (See *Jackson* v. *State*, 210 App. Div. 115; *Matter of Semper* v. *Duffey*, 227 N. Y. 151.) Applying these principles we find that the situation here was not like that in *Faber* v. *City of New York*, and *Jackson* v. *State*, nor like that in *McGovern* v. *City of New York* (234 N. Y. 377) in all which cases the true situation could not have been discovered by reasonable investigation. The evidence here is to the contrary, for the absence of the ledge was promptly discovered by claimant when claimant's agent came to look for it.

Further in this case by the language of the proposal and contract quoted above, the claimant has agreed not to rely upon the representation which included the erroneous information. In view

of the absence of bad faith, the claimant cannot now assert reliance on the erroneous statement.

We need not mention claimant's contention of breach of contract in failing to estimate and pay for work completed further than to say that an examination of the evidence convinces us that the findings against the claimant in this respect are justified by the evidence.

The Court of Claims has jurisdiction to award affirmative judgment upon the State's counterclaim. While, concededly, the Court of Claims could not entertain a suit by the State against an individual, it may entertain a counterclaim against the claimant and grant an affirmative judgment based upon it because an implied consent to the interposition of such counterclaim is given by the act of the claimant in filing a claim in the court. The right to sue the State or to require audit of a claim against the State is a privilege given by statute which may be subjected to conditions. By the terms of the very statute granting the privilege, provision is made for the determination of a counterclaim with right to affirmative judgment on the part of the State. (Court of Claims Act, § 12; *People ex rel. Swift* v. *Luce,* 204 N. Y. 478, 490.)

The cause of action on the counterclaim rests on the provision of section 132 of the Highway Law to the effect that after cancellation of the contract, " any excess in the cost of completing the contract beyond the price for which it was originally awarded shall be charged to and paid by the contractor failing to perform the work," and on paragraph 10 of the contract between the parties as follows: " he [the commissioner of highways] may cancel the contract and re-advertise and re-let as provided in section 132 of the Highway Law, being chapter 30 of the Laws of 1909, and the amendments thereto, and any excess in the cost of completing the contract between (*sic*) the price for which it was originally awarded shall be charged to and paid by the contractor failing to perform the work."

Although the court has found that the Dale Engineering Company has completed the highway, this finding is not in accordance with the evidence, which goes no further than that the work was " near completion." The word " cost " both in the statute and in the contract must mean expenditure. (*Herrmann & Grace* v. *Hillman,* 203 N. Y. 435; *Fraenkel* v. *Friedmann,* 199 id. 351; *Martin* v. *Flahive,* 112 App. Div. 347; *Edison El. Co.* v. *Guastavino Co., No. 2,* 16 id. 358.) Proof is lacking as to the amount of the expenditure except in so far as the Dale contract itself may constitute evidence on this point. Until the work is completed, however, even the contract itself affords no proof of the amount of work done or the cost of doing the

work. Neither the Gross nor the Dale contract provided for payment of a fixed sum. They are in all essentials unit price contracts. The gross sum included is only the aggregate of the sums arrived at by multiplying the unit prices by the approximate estimates of the work required. By the terms of the contract the estimates were subject to correction for inaccuracies. Without proof, therefore, of the actual amount of work done, we are in the dark as to the cost of the work.

During the progress of the work by the Dale Company the alignment of the road for the distance of a mile and a half was altered under the direction of the State. It does not appear in the evidence what effect this had upon the cost of the work. If it increased the amount of work, the claimant could not be charged with such increase; if it diminished it, the claimant should receive the advantage of such diminution. The alteration was not such as to relieve the claimant from the burden of paying the additional cost of the work beyond what the State would have been obliged to pay under the contract to claimant for both contracts provided for such alterations. The State should, however, have produced proof as to the effect of the alteration upon the amount of work required to be performed in building the road.

The State has failed to establish its counterclaim for the reason that it has failed to prove what sum it expended in carrying on or completing the work. In an ordinary case such a situation could be met by affirming the judgment in so far as it dismissed the plaintiff's complaint and severing the action as to the counterclaim and ordering a new trial as to that. (*City of Buffalo* v. *D., L. & W. R. R. Co.,* 176 N. Y. 308; *Ashmead* v. *Sullivan,* 198 App. Div. 885.) Here, however, there is a difficulty. If the action is severed and the counterclaim considered as a complaint in a separate action, the Court of Claims will be without jurisdiction to hear it. We are of the opinion, however, that the consent implied from the filing of the claim is sufficient to authorize the Court of Claims to exercise a continued jurisdiction over the matters involved in the counterclaim.

The judgment of the Court of Claims in so far as it dismisses the claim should be affirmed, and that part of the judgment which awards an affirmative judgment in favor of the State and against the claimant reversed on the law and the facts and a new trial ordered as to the counterclaim, without costs of this appeal. Various findings should be disapproved and reversed and new findings made.

HUBBS, P. J., CROUCH and TAYLOR, JJ., concur; DAVIS, J., not voting.

Judgment, in so far as it dismisses the claim, affirmed, and that part awarding an affirmative judgment in favor of the State and against the claimant reversed on the law and facts, and a new trial granted on the counterclaim, without costs of this appeal to either party. Certain findings of fact reversed and new findings made.