■ RUSCIANO CONSTRUCTION CORP. et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 46425.) — Cross appeals from a judgment in favor of claimants, entered upon a decision of the Court of Claims. Claimants contracted to construct 2.38 miles of main highway and 10.13 miles of access roads and adjacent structures on Staten Island, New York for a total bid price of $12,696,072.40. This claim arises out of the work on that project. Originally, there were 33 causes of action demanding judgment for approximately four million dollars. Several causes of action were disposed of prior or during trial, leaving 2 through 7, seeking damages resulting from delay and

interference and 8, 9, 10, 12, 13, 14, 15 and 16 involving specific items. The State appeals from judgment in favor of claimants in the amount of $1,654,770.08, plus interest, on all of these and the claimants cross appeal with respect to adverse judgments on the 12th and 15th causes of action. The contract was let September, 1960 with the work to be completed by September 1, 1962. It was not substantially completed until December 31, 1963. The trial court found the State guilty of delay and interference on causes of action 2 through 7 and apportioned 65% of the increased cost from September 1, 1962 to December 31, 1963 to the State. Specifically, it found the delay was caused by the State's misrepresentation of subsoil conditions requiring unanticipated excavation of "unsuitable material" (2 UM), failure to deliver the site of structures No. 1 and No. 2 free for work, improper drainage specifications resulting in delay during revision, delay occasioned in the Victory Boulevard area because of the State's failure to warn of underground utility lines, provide detour plans and warn of known unstable soil conditions and failure to free the electric lines and design uses of metal place forms for the bridge structures. There is no doubt that the site contained areas of subsoil of "unsuitable material" (2 UM) known as "red, silty, till soil", which had to be removed because, although it was stable when dry, it was unstable when wet. At the time of the bid letting, the State had at its disposal not only the 71 test holes indicated on the contract proposal submitted to the bidders, but an additional 657 holes and borings made by the State. The trial court found that the State's failure to make available all soil testing information and failure to provide in the contract plans for the possibility of unstable subsurface material, contributed to the delay in completing the project. The exculpatory clauses in the contract and in the invitations to bid do not insulate the State from liability where the conditions are not as represented in the contract and inspection by the contract or would not reveal the representations to be false. (*Foundation Co.* v. *State of New York*, 233 N. Y. 177, 184–185 *Cauldwell-Wingate Co.* v. *State of New York*, 276 N. Y. 365.) The State's representative not only knew of the presence of this unsuitable material, but also knew that it was unstable in its wet condition and the State is, therefore, answerable for its failure to put bidders on notice of that condition in the contract proposals. Excavation of this unsuitable material (2 UM) found on the site resulted in delay occasioned by the necessity of setting up a dredging operation as opposed to the original plan of a drag line to do the excavating. The State's position that this would not delay work in the other areas of project was refuted by the State's engineers who agreed that it was imperative that this unsuitable material be removed by the end of 1960 so that back filling and the embankment could be started in early 1961, thereby giving two paving seasons. It appears from the evidence that the claimant did not intend to start the removal work until December, 1960 in any event and the delay would be from December, 1960 until mid-February, 1961, one and a half months instead of the two and a half months found by the trial court. The project required that the claimants reconstruct two bridge structures, No. 1 and No. 2, and maintain temporary structures during the work to carry the railroad tracks of the Staten Island Railroad Company over two service roads paralleling the new highway. It was the State's responsibility to obtain site clearance from the railroad and Consolidated Edison Company for work on the site. It is claimed that the State's failure in this respect delayed work from October, 1960 to November, 1962, a period of 25 months. Claimant planned to start work at this site March 25, 1961. On June 5, 1961 railroad permission was obtained. On August 18, 1961 the Consolidated Edison power line was removed and the site clear. The delay

thereafter was occasioned by design difficulties involving the track support and foundation loadings. The track support designs were approved November 6, 1961 and the State concedes responsibility for that delay, but denies it caused delay beyond the completion date. The contract drawings for foundation designs for the structure did not show foundation loading. This was the apparent reason necessitating redesign of those structures. The State disclaims responsibility in this regard and, while it appears the State delayed approval of claimant's plans unnecessarily, it is also clear that the claimants, who were responsible for designing the footings under the contract, did not at any time submit plans and specifications adequate to the task, as requested, until those finally approved November 1, 1962. It is impossible to determine from the record what effect the delays involved with these structures, located 1,000 feet west of the westerly end of the contract paving, had on the overall project. Revision of incorrect drainage provisions in the contract was not furnished until June 6, 1961 and delayed paving in the Willowbrook area. It was not completed until July of 1963. There was similar delay in the Victory Road area because of the State's failure to issue revised drawings to correct interference with existing gas and water lines, to approve a detour plan and because of the unstable soil conditions. The delay with respect to the nine bridge structures was minimal. All but two were completed within the original contract date and they were completed on September 16, 1962 and October 24, 1962. Nevertheless, this delay was occasioned by the State's failure to approve electrical mounting plans on the structures until June of 1962. For all these reasons, there can be no doubt the State was responsible to a substantial degree for the 16 months delay in completing the project. The trial court, in making its findings to that effect, accepted audited expense figures for additional costs for supervision, field expense, overhead, equipment and so forth and arrived at a cost occasioned by the delay on the 2nd — 7th causes of action and then determined that 65% of the delay period was attributable to the State and found damages on those causes of action in the amount of $611,698.16. Obviously, it is impossible to allocate specific amounts of damages to each item of interference or delay. The impossibility of establishing a precise formula for computing damages should not foreclose the claimants' clear right to recover. (*Westcott* v. *State of New York,* 264 App. Div. 463.) If the trial court's apportionment of liability can be reasonably supported by the record, it should not be disturbed. (*Johnson, Drake & Piper* v. *State of New York,* 31 A D 2d 980.) While the fact of delay appears in this record, there was insufficient evidence upon which the trial court could reasonably determine the effect of it or allocate responsibility for it. Counterbalancing the State's fault are the circumstances that the claimants failed for four months to obtain interstate transportation licenses for their trucks from New Jersey to New York. This was a matter of no small consequence considering that the primary feature of this project was a "borrowing" operation requiring the removal of unsuitable material from the site and bringing in hard fill, gravel and paving material, over 2½ million cubic yards of it. During the period of the operation, there was a concrete strike for a three-month period in 1961 for which the State was not liable. These two items affected the entire project, not localized areas. Additionally, there were delays by claimants in preparing design features, progressing the work and so forth which contributed to the delay in some degree. Heavy rains and snows hindered the excavation in 1960–1961. It may well be that the trial court took all these factors into consideration but the findings allow nothing more than an educated guess in apportioning the fault. None of the delays charged to the State affected the

job as a whole, an important consideration in view of the size of the project where temporary delays in one area could be minimized by pursuing work in another area.  Finally, it should be noted that the overrun expenses are lumped together so that even where the dates for specific delays are available, the overrun cannot be computed.  A determination of damages requires reasonable certainty with respect to the specific delays directly attributable to the acts of the State.  The trial court must allocate the total period of delay among the various factors which it found caused the delay.  (*Tully & Di Napoli* v. *State of New York*, 34 A D 2d 439; *Rao Elec. Equip. Co.* v. *State of New York*, 36 A D 2d 1019; see, also, *Luria Bros. & Co.* v. *United States*, 369 F. 2d 701.)  The trial court's determination with respect to causes of action 2 through 7 is vacated and remanded for new findings in accordance with this decision. The 9th cause of action involved stake-out surveys and seeks $73,012.42 for additional stake-outs because of contract revisions.  This compensation was approved by the trial court on the same 65%-35% basis as the award for delay and interference.  It is not at all clear from the record what the basis of the award is or why it was apportioned.  It is vacated and remanded. The trial court incorrectly awarded the sum of $54,518.25 to claimant on the 10th cause of action for excavating and removing material which was later used as fill.  The State had classified 72,691 cu. yds. of this excavated material as "unclassified excavation" (2S) ($.50/cu. yd.) suitable for use in embankments.  Claimant insisted it was "unsuitable material" (2 UM) ($1.25/cu. yd.).  The evidence is that it was referred to under both headings by the parties.  The contract generally provided that excavated material spoiled and used as fill on the site was to be compensated for at the rate of 15% of quantity.  The obvious purpose of this was to avoid paying for removing the item and paying once again for using it for fill when, in effect, it was merely being spoiled on the site.  The item involved in this cause of action was classified by the trial court as "unsuitable material" (2 UM).  By the contract specifications, this could not be used in embankments, whereas "unclassified excavation" (2S) could.  The material involved in this cause of action was used in the embankment, (as claimant conceded in the 12th cause of action, see findings No. 866, 871) and was properly classified as 2S by the State.  The award therefor is vacated.  The 12th cause of action involved six items which claimants said were improperly deducted quantities from the State's computation of materials placed as fill, "embankments in place" (2 ES).  Three of those claims were dismissed.  Of the remaining three items, the first involved the same material considered in the 10th cause of action.  The State classified the material as 2S for which an additional sum was payable at 15% of quantity under item 2 ES, embankment in place.  The trial court, because it had improperly found that the 72,691 cu. yds. was 2 UM in the 10th cause of action, held it was not subject to the 15% quantity limitation of 2S fill and, therefore, should be paid for at $1.82/cu. yd. under 2 ES.  This compounded the error on the 10th cause of action in which $54,518.52 had been awarded. The award in favor of claimants on this portion of the 12th cause of action is vacated.  The other two items in dispute in this 12th cause of action were omissions from item 2 ES rather than deductions.  The trial court found that the State omitted 50,468 cubic yards of foundation course material, items 39X and 39S and also 50,541 cubic yards of topsoil, item 121A from the 2 ES totals.  The claimants were paid for these quantities according to the unit bid prices of 31 S, 31 X and 121 A.  Payment for those quantities in item 2 ES in addition to the payments under the unit bid prices results in a double payment.  The payment computation sheets are confused, but obviously the

items are distinct, topsoil to be placed on top of the embankment, 2 ES and 39X and 39S being foundation materials placed on top of the built up embankment and under the pavement. The construction of the contract claimants urge results in compensation under two contract items for a single operation. This is not a reasonable interpretation of what the parties intended. The trial court's award of $296,288.72 in the 12th cause of action is vacated. The 14th cause of action resulted in an award of $128,698.45 for hauling 2 UM from stock piles in the Willowbrook area of the project to a waste area 5 or 6 miles away. It is claimants' contention that the State unreasonably ordered removal of this material from swale or park areas on the site. The award is limited solely to the Willowbrook area and does not concern the disposal of spoiled or unsuitable materials in other areas. The right to use unsuitable material in park or swale areas was conditioned upon submission of satisfactory plans by the contractor. The contract provides that 2 UM "shall be disposed of as shown on the plans or as noted under ' b — Excavation and Disposal ' in the General Specifications for Excavation " which provides " such materials shall be placed in soil banks by the contractor at his expense, or incorporated in the construction as designed in the plans or as directed by the engineer ". In the course of correspondence originating May 5, 1961 up until August 4, 1961 claimants tried to obtain permission to use this "unsuitable material" in the embankment without success and were repeatedly advised that it was to be disposed of on the site as directed by the engineer or removed, and that if used on the site appropriate plans for that use should be submitted. None were forthcoming until August 22, 1961 because the contractors incorrectly insisted it was the State's obligation to provide a plan. The award should be vacated. The trial court's determination with respect to the 8th cause of action is affirmed. We see little difference in the two types of excavation and no justification for compensating them at a different rate. The trial court's determination in favor of claimants on the 13th cause of action is affirmed. (*Tully & Di Napoli* v. *State of New York,* 34 A D 2d 439, *supra.*) Claimants' cross appeal with respect to the 12th cause of action is dismissed. While it appears the claimants computed their bid for select fill anticipating a double payment, there is no evidence in the record to support the trial court's finding that the State agreed or acquiesced in double payment in this fashion or that it was accepted practice. Claimants' cross appeal with respect to the 15th cause of action is dismissed. This seeks recovery for fill brought in for use in swale areas in lieu of " unsuitable material " (2 UM) that the State prohibited claimants from using. The claimants were paid for fill brought in to replace the 2 UM excavated under another item, 2 EC-B. Furthermore, there was no proof of the quantity imported to replace the 2 UM required to be wasted off the site. Judgment modified, on the law and the facts, so as (1) to vacate the awards upon the 2nd through 7th and the 9th causes of action and a new trial ordered as to said causes of action; (2) to vacate the awards upon the 10th, 12th and 14th causes of action and to dismiss said causes of action; and, as so modified, affirmed, in the amount of $477,605.75, without costs. Herlihy, P. J., Staley, Jr., Cooke, Sweeney and Simons, JJ., concur.