(April 8, 1976)

■ A. S. WIKSTROM, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 48548.)—Appeal from a judgment, entered March 8, 1971, upon a decision of the Court of Claims which dismissed claimant's second cause of action. On December 26, 1962 claimant entered into a highway construction contract with the State for the construction of Interstate Route 505 (Cortland-Tully section) covering 8.87 miles plus 5.72 miles of access roads. After the contract was accepted as complete on July 18, 1966, claimant filed this claim against the State demanding judgment in its second cause of action for $1,528,720 covering claimant's alleged increased costs in performing unclassified excavation. Its case was based on pretrial discovery which revealed that the State had failed to disclose to the bidders all available subsurface information. The State had made available seismic tests and boring logs taken in the areas where structures were to be located. It did not advise bidders, however, that borings had been made in areas between structures and that there were 10 boring logs available. Additionally, the State failed to reveal the existence of reports allegedly detailing the soil to be encountered along the highway project that had been made by various bureaus of the State Department of Public Works. The trial court dismissed

claimant's second cause of action holding that the State was under no duty to show to bidders test borings and other information assembled by the State to prepare the bidding documents. The court also held that even if such a duty existed, the information that the State withheld would not have assisted the claimant. It is the claimant's contention that when it entered into the performance of the contract, it encountered conditions which it did not anticipate; that the State was guilty of making false and fraudulent representations and that the State deliberately withheld information which it had in regard to subsurface conditions. It is the position of the claimant that had it had an opportunity to study this additional information, its bid in connection with unclassified excavation would have been substantially higher. In a portion of the State plans identified as Sheet 22, a special note was included advising bidders that the conditions and quantities shown on the sheet were not to be treated as a warranty or representation of the actual conditions or quantities that would be encountered. It reads as follows: "SPECIAL NOTE—Unclassified excavation: The excavation table appearing on this sheet was prepared by the State from the best information available. The contractor's attention is called to the fact that conditions and quantities, as shown on the table, are estimated, and not actual, and in any event they are not to be determined or considered by the contractor as a warranty or a representation by the Superintendent of actual field conditions or quantities. Borrow may be necessary even when not shown on the excavation table. Borrow, if required, shall be paid for under the regular item of unclassified excavation unless specifically provided for in the contract." Under the heading of "Special Bridge Notes" the proposal advised bidders that "[s]ubsurface explorations have been made for this project at locations indicated on the general plan". These notes dealt with the foundations for the structures that would be erected along the route and warned the bidder that "the information obtained therefrom is not to be substituted for personal investigation and research by the contractor as required by Paragraph 3 of the contract agreement". Article 3 of the standard State contract is essentially an exculpatory provision which reads as follows: "ARTICLE 3. EXAMINATION OF DOCUMENTS AND SITE. The Contractor agrees that before making his proposal he carefully examined the contract documents, together with the site of the proposed work, as well as its surrounding territory, and is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract, including the existence of poles, wires, pipes and other facilities and structures of municipal and other public service corporations on, over or under the site, and that his information was secured by personal investigation and research and not from the estimates or records of the Department, and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State." Claimant contends that once it began excavation work its original work plans had to be scrapped. It experienced difficulties working with the cut materials in that, at certain cuts, the material was "spongy, soft, wet, silty material that did not compact except with difficulty". In other cuts, it was described as being "stoney", "shaley", "boney". The result was that the claimant had to spend much more time and effort preparing the cut materials for use in the fills. Sheet 22 of the contract indicates that bidders should expect to remove 28,539 cubic yards of unsuitable materials from three locations. Actually, claimant was required to remove quantities far in excess of the State's figure. We are first confronted with the question of whether the figures on Sheet 22 should be considered representations in

light of the Special Note prominently set forth on the bottom of the Sheet warning contractors not to consider the information as being either a warranty or representations. In *Rusciano Constr. Corp. v State of New York* (37 AD2d 745, 746, mod 37 AD2d 789), one of the questions involved the State's failure to make available all soil testing information and to provide in the contract plans for the possibilities of unstable subsurface material which contributed to a delay in completing the project. We held that "the exculpatory clauses in the contract and in the invitations to bid do not insulate the State from liability where the conditions are not as represented in the contract and inspection by the contractor would not reveal the representations to be false." In *County Asphalt v State of New York* (40 AD2d 26) we applied this reasoning. Additionally, in *Warren Bros. Co. v New York State Thruway Auth.* (34 AD2d 97, 99, affd 34 NY2d 770), we said: "In a construction contract between the State and an individual, which contains representations as to existing conditions affecting work thereunder as well as an exculpatory clause relieving the State of liability and requiring personal inspection of the contract site, liability, nevertheless, may attach to the State if said conditions are not as represented and (1) inspection would have been unavailing to reveal the incorrectness of the representations *(Foundation Co. v. State of New York,* 233 N. Y. 177, 184–185; *Faber v. City of New York,* 222 N. Y. 255, 260), or (2) the representations were made in bad faith *(Young Fehlhaber Pile Co. v. State of New York,* 265 App. Div. 61; *Jackson v. State of New York,* 210 App. Div. 115, affd. 241 N. Y. 563)". Accordingly, we do not agree with the trial court that the State was under no duty to show bidders boring tests and other subsurfacing information that was assembled by the State in the bidding documents. Despite the State's failure to disclose all boring logs, however, we conclude that the claimant has failed to show, other than by conclusory assertion, material respects in which the undisclosed information substantially differed from the information which had been provided. It is conceded that the basic problem with the material in the cuts was that it was "wet" and "boney" which made it difficult to compact. The boring logs with which claimant was provided indicated the wetness of the material. Furthermore, the boring tests which the claimant saw before it submitted its bid described the material as consisting of gravel, sand and silt, but also indicated the presence of shale, sandstone, and other rocky materials. Similar descriptions are found in the tests which were wrongfully withheld. The bulk of claimant's proof at trial indicates that as a result of difficulties in compacting material for fill areas caused by wetness and the presence of rocks, its plan of operations had to be altered and delays were encountered because machinery was continuously being moved back and forth between incomplete sites. However, any reliance upon departure from claimant's work schedule is irrelevant, since the testimony indicates that the work schedule was not prepared until after the contract was awarded. The issue is whether claimant was lulled into submitting a low bid as a result of the State's failure to reveal all information known to it. On this question, we find no proof from which it can be specifically determined how claimant's bid would have differed had it had more information. We also note that claimant was paid the contract unit price for quantities of excavation in excess of contract estimates. We, therefore, conclude that although the State should have disclosed all the boring tests to bidders, claimant has failed to submit satisfactory evidence to establish the specific effect more complete informa-

tion might have had on its bid and how that bid would have differed. We have also examined claimant's other contentions and find them to be without merit. Judgment affirmed, without costs. Koreman, P. J., Greenblott, Kane, Main and Larkin, JJ., concur.