HERSEY GRAVEL CO. *v.* STATE HIGHWAY DEPARTMENT.

1. DAMAGES—BREACH OF HIGHWAY CONSTRUCTION CONTRACT—TORTS —SOVEREIGN IMMUNITY.

Highway construction contractor which did not know, at time it made its bid, that the material to be excavated was different from that described on the plans, and sought to recover damages resulting from a misrepresentation of subsoil conditions, sought damages recoverable as for breach of contract although facts developed at trial might have justified a tort action, hence application of doctrine of sovereign immunity will not be made to bar recovery for additional cost of work of which the State got the benefit.

2. HIGHWAYS AND STREETS—CONSTRUCTION CONTRACTS—BIDS—DEFECTIVE PLANS AND SPECIFICATIONS.

Notation upon specifications for highway construction project that "soil notations shown on the plans are for information only and shall not be construed to relieve bidders of their responsibility to satisfy themselves by examining the site of the proposed work as to the actual soil conditions," which

soil notations resulted from extended investigations previously made by State highway department including test holes dug at places shown on the plans, did not impose duty upon bidder to make a more extended investigation of soil conditions than two-day examination of site by such bidder's representative where bids were to be opened in less than two weeks from time advertisement therefor appeared nor relieve department from liability for defects in plans and specifications.

3. SAME—DEFECTIVE PLANS—SOIL MANUAL.

Fact that exact definitions of terms used on plans and specifications for State highway construction project might have been obtained from field manual of soil engineering published by State highway department available at its office and in public libraries would not relieve such department from liability for inaccuracy in plans and specifications, even if bidder were required to examine such manual, in connection with information contained in plans, where information as to subsoil conditions, contained in plans and manual, did not correspond with the subsoil conditions actually encountered.

4. WORDS AND PHRASES—BORROW PITS.

A "borrow pit" is a bank or pit from which earth is taken for use in filling or embanking.

5. HIGHWAYS AND STREETS—BORROW PITS—IMPLIED WARRANTY—EVIDENCE.

Court of claims' disallowance of claim made for alleged breach of implied warranty as to excavations from borrow pits for highway construction because of claimed custom of contractors to consider the "borrow" to be of the same material as the roadbed itself *held*, justified under record presented.

6. DAMAGES—WAIVER—ACCEPTANCE OF PAYMENTS.

Acceptance of payments due under highway construction contract and for extras does not constitute a waiver of damages suffered by reason of a breach of warranty, express or implied.

7. SAME—RECOMPUTATION ON REMAND.

On remand of judgment of court of claims where cross appellant claims error in computing amount of damages, affirmance is ordered without prejudice to application to trial judge for recomputation of its amount.

BOYLES, C. J., and NORTH and WIEST, JJ., dissenting.

Appeal from Court of Claims; Miller (Guy A.), J., presiding. Submitted January 19, 1943. (Docket No. 76, Calendar No. 42,219.) Decided May 18, 1943.

Claim by Hersey Gravel Company against State of Michigan and State Highway Department for work performed under road construction contract. Claim allowed in part. Defendants appeal. Plaintiff cross-appeals. Affirmed, but remanded for recomputation of damages.

*Shields, Ballard, Jennings & Taber,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Meredith H. Doyle, A. Floyd Blakeslee, Eugene F. Townsend,* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

BUSHNELL, J.   This is an appeal by defendants State of Michigan and Michigan State highway department from a judgment entered in the court of claims in favor of plaintiff Hersey Gravel Company in the sum of $16,155. The total amount claimed by plaintiff is $59,622.27, and it has taken a cross-appeal from the disallowance by the court of the remainder of that amount.

On July 7, 1938, the State advertised for bids for the construction of 5.17 miles of highway on US-41 and M-28, between Michigamme and Lake George in Spurr township, Baraga county. This advertisement came to the attention of William S. Allswede, vice-president and manager of plaintiff, on July 10th. He obtained plans and specifications from the highway department and spent two days examining the proposed right of way and "borrow pits." The blueprints which he examined contain notations of soil conditions upon which he claims his company based its bid, which was filed and opened on July 20th. This bid in the sum of $266,324.19, being the lowest of those tendered, was accepted, and a contract dated August 8, 1938, was executed cov-

ering the project. The contract required the work to be completed by July 1, 1939. Delays were encountered and the work was not actually completed and accepted until July 1, 1940, but no delay penalty was exacted by the State.

The contract called for 373,086 cubic yards of earth excavation and 17,007 cubic yards of rock excavation, but an extra construction estimate shows that the contractor completed an additional 32,175 cubic yards of earth excavation and 11,390.8 cubic yards of rock excavation. The amount allowed plaintiff for additional construction, including these items and others, totalled $35,111.67.

The verified claim filed by plaintiff in the court of claims states that:

"If the material to be encountered had been of the character indicated by the drawings and as represented directly or impliedly, the claimant could have completed the work at the contract price and would have earned a reasonable profit. By reason of the fact that the material actually encountered was not the kind indicated in the drawings and directly and impliedly represented to be, but of a kind vastly more difficult and expensive to move as above set forth, the cost of completing the work of the contract was $59,622.27 in excess of the cost anticipated."

These alleged representations and warranties of fact as to subsoil conditions, for the breach of which plaintiff seeks damages, consisted of certain descriptive phrases on the blueprints, such as "Baraga fine sandy loam," "Crystal Falls loam," and "Diana stony loam." As stated in the opinion of the circuit judge presiding in the court of claims:

"There is no real difference, under the testimony, between the three soil designations above-quoted. The Baraga formation denotes a formation which,

generally, had three layers or horizons. This formation is, generally, topped by a thin covering of top soil and then by a few inches of sandy loam. Below that is another layer of earth which is apt to be very, very firmly compacted and to contain more or less rocks and boulders running from comparatively small sizes up to considerable dimensions. The third zone differs from the middle zone in that it is harder and may have more rock and is more difficult to handle.

"The term 'Crystal Falls' indicates a formation which mostly contains the same material but the bed rock underlying it is nearer the surface and there is less of the looser material.

"The Diana formation does not differ materially from the other two in the contents of the soil found but it does differ in that it is wetter and that its water-table is nearer the surface of the ground.
\*     \*     \*

"The words 'Baraga,' 'Crystal Falls,' and 'Diana' are part of the technical terminology of soil experts and have arbitrary meanings attached to them. Under the testimony 'Baraga' is described as, 'Well drained, moderately stony loam. Bed rock four to eight feet. Fine grading difficult due to stoniness. Surface of the bed rock is very irregular.' 'Crystal Falls:' 'Thin stony loam and rock outcrops. Fine grading difficult due to stoniness.' 'Diana:' 'Three to eight feet, wet stony loam over bed rock.' "

The soil notations on the blueprints were made as a result of investigations conducted under the supervision of the district soils engineer of the highway department in the winter of 1937, when a crew of men dug test holes down to the ditch grade and took soundings at points where cuts were shown on the plans.

Plaintiff's testimony is that the actual soil conditions encountered were of an entirely different char-

acter from those indicated on the plans, far more difficult and costly to handle, and destructive to its equipment. For example, although plaintiff claims its equipment was in good working order, 17 sets of steam shovel dipper teeth were used in the west ''borrow pit'' in three months, and 16 sets in other pits in less time, although it takes, ordinarily, only one set of dipper teeth a season to handle 200,000 yards of material.

The State denies that the material encountered was more difficult and expensive to handle than that described in the plans, and, although it maintains that the notations thereon were accurate, insists that the plaintiff should have been aware of the difficult and rocky nature of the terrane because of the outcroppings of ledge rock and boulder formation readily discernible to prospective bidders. The State admits that the work progressed slowly, but charges that this was because of the dilatory methods employed by plaintiff and its lack of good enough equipment. It is asserted that, if plaintiff's representative had made the proper kind of investigation, the exact nature of the soil could have been ascertained and its bid made accordingly.

The trial judge held, under the authority of *Atletwed* v. *City of Marysville,* 295 Mich. 102, that plaintiff was entitled to rely upon the contract, blueprints, plans and specifications prepared by the State, and upon the engineering practice in that connection, and he stated that it was the duty of public authorities, when preparing proposals, to provide all available information and data in unmistakable and clear-cut terms. He absolved the State and the highway department of any bad faith, but held that, so far as the excavations along the length of the highway were concerned, there was a warranty in connection with the nature of the subsoil,

and that this warranty had been breached because of a misstatement of the conditions actually existing. He declined to hold that an implied warranty existed with respect to the nature of the soil in the "borrow pit," or that there was any conclusive testimony that plaintiff's equipment was not in good condition.

The State contends that plaintiff's pleadings and proofs hint at and sound in tort and, therefore, under the doctrine of sovereign immunity, the court erred in allowing any recovery. It does not necessarily follow that, because plaintiff sought to recover damages resulting from a misrepresentation of subsoil conditions, that its claim is in tort. Plaintiff did not know, when it made its bid, that the material to be excavated was different from that described on the plans; and, although the facts developed at the trial might have justified a tort action, the claim may still properly be for damages for breach of the contract.

As was said in *United States* v. *Atlantic Dredging Co.,* 253 U. S. 1 (40 Sup. Ct. 423, 64 L. Ed. 735):

"There is no intimation of bad faith against the officers of the government, and the court of claims regarded the representation of the character of the material as in the nature of a warranty; besides, its judgment is in no way punitive. It is simply compensatory of the cost of the work, of which the government got the benefit."

See, also, *Jackson* v. *State of New York,* 210 App. Div. 115 (205 N. Y. Supp. 658), affirmed in 241 N. Y. 563 (150 N. E. 556). The theory of sovereign immunity as developed in *Manion* v. *State Highway Commissioner,* 303 Mich. 1, which involved a claim for personal injuries, is, therefore, not applicable to the facts now under consideration.

The State next relies upon the accuracy of the representations on its plans and specifications, and also insists that plaintiff is precluded from recovery because the blueprints upon which its bid was based are supplemented by specifications which say:

"Soil notations shown on the plans are for information only and shall not be construed to relieve bidders of their responsibility to satisfy themselves by examining the site of the proposed work as to the actual soil conditions."

This provision put plaintiff on notice, but the notations on the plans had the effect of also advising plaintiff that an investigation had been made by the highway department of the character of the soil along the entire proposed highway. The testimony shows that this investigation extended over a considerable period of time. The period between the time the advertisement appeared asking for bids and the date upon which bids were to be submitted and opened would not suggest to any reasonable bidder that it was necessary for him to make a more extended investigation of soil conditions than was made by plaintiff's manager, Allswede, who spent two days examining the proposed right of way. Plaintiff complied with the requirements of the proposal and carried out the responsibility to satisfy itself as to actual soil conditions by the examination of its manager of the site of the proposed work.

"Undoubtedly the commission's knowledge of subsoil conditions was superior to that of the plaintiffs, and they tried to acquire this knowledge from it. It is equally true that these facts were not within the fair reasonable reach of the plaintiffs, and there was lack of time for them to obtain this information by an independent investigation before the letting. *   *   *

"The duty rested on the sewer commission to furnish to the plaintiffs in this case all the material information it had in its possession, obtained either by borings or from past experience, as to subsoil conditions in the sewer line, and if it failed to do so, and as a result thereof the plaintiffs were put to large additional expense in completing the contract, they are entitled to recover the reasonable damages sustained by them." *Davis* v. *Commissioners of Sewerage,* 13 Fed. Supp. 672, 681.

In *United States* v. *Atlantic Dredging Company, supra,* the court said:

"The case is, therefore, within the ruling of *United States* v. *Spearin,* 248 U. S. 132, 136 (39 Sup. Ct. 59, 63 L. Ed. 166, 169), where it is stated that the direction to contractors to visit the site and inform themselves of the actual conditions of a proposed undertaking will not relieve from defects in the plans and specifications, citing *Christie* v. *United States,* 237 U. S. 234 (35 Sup. Ct. 565, 59 L. Ed. 933) ; *Hollerbach* v. *United States,* 233 U. S. 165 (34 Sup. Ct. 553, 58 L. Ed. 898), and *United States* v. *Utah, N. & C. Stage Co.,* 199 U. S. 414, 424 (26 Sup. Ct. 69, 50 L. Ed. 251, 255)."

The State contends that the contractor could have obtained the exact definitions of the terms used on the plans by reference to a publication of the State highway department, called the "Field Manual of Soil Engineering," which was available at its office and in various public libraries. Even if we should hold that it was necessary for the contractor to examine this manual, nevertheless it is apparent from the testimony in this record that the information contained in the plans, and the definitions in the handbook, did not correspond with the subsoil conditions actually encountered.

Plaintiff's cross appeal is from the trial court's refusal to allow its claim in connection with material excavated from "borrow pits." A "borrow pit" is "a bank or a pit from which earth is taken for use in filling or embanking." Webster's New International Dictionary (2d Ed.). The court held:

"As to the claims in connection with the borrow pits, I can find no ground for raising any implied warranty in this contract except the one that the material from those pits was reasonably suited to use as fill material in the making of grades. In point of fact the material was suitable for that use as such material. It was difficult to excavate with shovels but it was excavated with shovels. One pit became impracticable after about 14,000 cubic yards were removed but another pit was substituted. One pit was difficult of excavating and presented some compacted formation that could not be excavated after some 97,000 cubic yards had been taken from the pit with the equipment claimant had. I am not able to see where there is any implied warranty to be drawn from the contracts in connection with the borrow pits which has been violated. The conclusion that I do reach is that the petitioner is entitled to compensation for highway excavations, but not for excavations in the pits."

Plaintiff contends that there is an implied warranty that the kind of soil noted on the plans at specified stations is the same kind of material to be encountered in the borrow pits corresponding to such stations. It bases this contention upon a claimed custom of contractors to consider the "borrow" to be of the same material as the roadbed itself. It also contends that the State failed to furnish proper borrow pits. The evidence offered in support of these contentions does not justify a determination that the trial judge was in error in his conclusion and that his finding should be set aside.

"We are unable to say in the instant case that 'the evidence clearly preponderates in the opposite direction.'" *Hanson* v. *Economical Cunningham Drug Stores, Inc.*, 299 Mich. 434, 437. The court did not err in disallowing plaintiff's claim for additional compensation for material excavated from the borrow pits.

The State argues that plaintiff's acceptance of payment of the contract price, its approval of the final estimate of extras, and acceptance of payment therefor, constitute a waiver and bar further recovery. The instant action is not for payments due under the contract, or extras performed thereunder, but for damages for breach of an implied warranty. Acceptance of payments due under the contract and for extras does not constitute a waiver of damages suffered by reason of a breach of warranty, express or implied. *Pitt Construction Co.* v. *City of Alliance, Ohio* (C. C. A.), 12 Fed. (2d) 28, and *Faber* v. *City of New York*, 222 N. Y. 255, 261 (118 N. E. 609).

Plaintiff also claims on cross appeal that the court erred in computing the amount of damages and should have applied the excess cost of 35.9 cents per cubic yard against the entire amount of the excavation instead of the difficult material only, and that, therefore, the judgment should be modified and increased. In reply, the State suggests that, if this court holds that liability exists (a point which it does not concede), and if plaintiff can show that the figures are incorrect, then the record should be transmitted to the trial court for the purpose of recomputation. We express no opinion on this afterthought, it never having been passed upon by the trial judge. It can yet be brought to his attention. If, in his opinion, the computation is incorrect, a recomputation can be made and a corrected judgment entered.

The judgment of the court of claims is affirmed, but without prejudice to an application to the trial judge for recomputation of its amount. Costs to appellee.

CHANDLER, STARR, BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J.

BOYLES, C. J. (*dissenting*). Plaintiff bases its claim on statements made by the State highway department in certain plans and specifications attached to and apparently made a part of a highway construction contract. The statements relied upon by plaintiff were notations of soil conditions in connection with blueprints. When plaintiff relies for recovery on the lack of accuracy of these notations in the plans, it must accept the plans in their entirety. Plaintiff cannot base its claim for recovery on a part of the plans and ignore other provisions in the same plans which are to its disadvantage when they fail to suit its purpose. The notations of soil conditions in the plans on which plaintiff relies were subject to this provision:

"Soil notations shown on the plans are for information only and shall not be construed to relieve bidders of their responsibility to satisfy themselves by examining the site of the proposed work as to the actual soil conditions."

Plaintiff did examine the site of the proposed work as to actual soil conditions. There is no sound basis in law for plaintiff's present claim that it was misled by the plans. In the absence of fraud, deceit, by agreement by someone authorized to make the change, the written agreement controls. Plaintiff cannot now recover for unanticipated soil conditions.

The judgment should be set aside and the cause remanded to the court of claims for entry of judgment of no cause for action, with costs to defendants.

NORTH and WIEST, JJ., concurred, with BOYLES, C. J.