**WALLA WALLA PORT DISTRICT,**
**Appellant,**

v.

**H. G. PALMBERG, Appellee.**
**No. 16547.**

United States Court of Appeals
Ninth Circuit.
June 13, 1960.

---

Harley W. Allen, Walla Walla, Wash., for appellant.

M. E. Reynolds, Astoria, Wash., for appellee.

Before CHAMBERS, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Judgment was entered in the district court, based on a jury verdict in favor of appellee [plaintiff in the district court] and against appellant [defendant in the district court] in the amount of $33,920.-00 for additional compensation on a construction contract. Judgment was entered on the verdict, the court, however, reserving jurisdiction to determine whether appellee was entitled to interest thereon prior to the judgment. By supplemental judgment the court adjudged and decreed that the appellee recover nothing on his claim for interest, and further adjudged and decreed that appellee recover interest at the legal rate from March 19, 1956 until paid on the sum of $50,186.40, it having been stipulated and agreed between the parties that said sum was admittedly due, owing and unpaid from appellant to appellee. Appellant appeals from the judgment based on the jury verdict and from that portion of the supplemental judgment which allowed interest on said sum of $50,186.40.

The appellant, Walla Walla Port District, is a municipal corporation organized and existing under the laws of the State of Washington, and appellee, H. G. Palmberg is a citizen and resident of the State of Oregon. Hence, diversity of citizenship existed between the parties, and the amount in controversy exceeded the sum of $10,000. The district court, therefore, had jurisdiction under Title 28 U.S.C.A. § 1332. This Court's jurisdiction is based on Title 28 U.S.C.A. §§ 1291 and 1294.

Appellant sets forth three main specifications of error which are: (1) the district court erred in refusing to grant appellant's motion for a directed verdict and to set aside the jury verdict and enter judgment for the appellant; (2) the court erred in permitting the introduction of opinion evidence on the part of appellee relative to the amount of cost in dredging rocks and boulders that it claimed could not have reasonably been anticipated under the contract; and (3) the court erred in allowing interest on the sum of $50,186.40 admittedly due from appellant to appellee.

We will first consider appellant's contention that the district court erred in allowing interest on the sum of $50,186.40 from March 19, 1956 to date of payment, as set forth in the supplemental judgment.

Under the law of the State of Washington the governing body of a municipal corporation is required to withhold fifteen percent of progress payments on public works projects until after completion of the project and after payment of claims, etcetera. In the instant case, on March 15, 1956, appellee submitted to the engineer of appellant his final estimate showing total contract earnings. This final estimate contained the following statement: "In addition to the above, claim in the amount of $53472.91 is pending per letter of Jan. 20, 1956, from H. G. Palmberg to Walla Walla Port District." As part of the final estimate is the certificate of the engineer of the district certifying that the partial payment is due and payable. On March 19th the engineer of the district certified to the district that the final amount due on the contract and payable to the appellee was the sum of $50,186.40. The engineer's certificate was submitted to the port commissioners, who promptly prepared and signed a voucher in the sum of $50,186.40 to be signed by appellee. The voucher contains the following statement: "Final payment on construction work at Attalia per statement dated March 15, 1956—$50,186.40." Correspondence between the parties establishes that the district refused to in any way change or modify the statement con-

tained in the voucher. The position of the district is set forth in a letter directed to counsel for appellee by counsel for appellant, the pertinent part of which states:

"As you know, we have already forwarded a voucher to Mr. Palmberg covering the final payment on his contract. Obviously, we do not wish to make any commitment concerning this matter which would jeopardize any defense the Port might wish to make. As you know, I represent a tax-paying body, which in turn represents tax payers, with the result that neither the Commissioners nor myself are in a position to waive proper defense that might be made."

Appellee refused to sign and deliver the voucher because of his fear that to do so might jeopardize his claim for extra compensation. This impasse was not broken, and the appellant demanded a return of the voucher, with which demand appellee complied.

In urging that the district court erred in the allowance of interest, appellant relies on Sections 42.24.010, Revised Code of Washington,[1] and Section 53.36.010, Revised Code of Washington.[2] From such code provisions appellant argues that since the appellee failed to sign and present the voucher, and failed properly to perfect his claim, therefore, the liability of the district

never matured and the award of interest by the district court was without legal sanction. In the agreed statement of facts contained in the pretrial order it was agreed, "That plaintiff became entitled to payment for the balance of the work on said contract in the sum of $50,-186.40 on the final and closing estimate * * *. That Defendant has at all times offered to and been willing to pay the amount of said final estimate to the Plaintiff as full payment under the contract." It is clear from the record that said sum became due and owing on March 19, 1956. Absent the Code provisions mentioned, appellee would have become entitled to interest on said sum from the due date to the date of payment. McHugh v. City of Tacoma, 1913, 76 Wash. 127, 135 P. 1011. In that case there was involved a construction contract with the City of Tacoma, Washington. At page 1016 of 135 P., it is stated:

"It is also argued by the appellant that interest should be allowed upon the amount found due from the time of the completion of the contract until payment. This no doubt is correct. Parks v. Elmore, 59 Wash. 584, 110 P. 381."

The Code sections relied upon do not cover or purport to cover a situation such as that involved here wherein the voucher contains a condition or stipulation which may operate as a waiver of other valid claims against the district. It is to be noted that the language on

1. Sec. 42.24.010 Revised Code of Washington:

"Itemized vouchers required. All precinct, county, district and state officers and all commissions of the state of Washington charged with the disbursement of public moneys or certifying indebtedness to the state auditor, or other disbursing officer, shall take fully itemized vouchers for such disbursements; said vouchers shall be taken in duplicate, one to be filed with the auditor of state, the other to be retained by the officer making the disbursement or certifying the indebtedness. Said vouchers shall contain a certificate by the disbursing officer, certifying on honor that the materials furnished, labor performed, or serv-

ices rendered for which such disbursement is made have been actually delivered, rendered or performed: Provided, That all county, district or precinct officers shall file such vouchers with the county auditor. (1891 c 126 § 1; RRS § 5512.)"

2. Sec. 53.36.010 Revised Code of Washington:

"District treasurer. The treasurer of the county in which a port district is located shall be treasurer of the district. All district funds shall be paid to him as such treasurer and shall be disbursed by him upon warrants signed by a port auditor appointed by the port commission, upon vouchers approved by the commission."

the voucher states that it is "final payment on construction work at Attalia" and not "final payment on construction contract at Attalia." It is also clear that if appellee had signed the voucher and secured payment that the district would have interposed accord and satisfaction as an additional defense to appellee's claim for additional compensation. Accord and satisfaction constitutes a good defense under Washington law. James v. Riverside Lumber Co. et al., 1922, 121 Wash. 130, 208 P. 260. In our view appellee did not forego his right to interest on the sum admittedly due because of his unwillingness to run the risk of waiving or jeopardizing his claim for extra compensation. In this connection it is to be remembered, as stated by the district court in his legal memorandum on this subject, "the facts remain that plaintiff had been deprived of the use of money admittedly due, owing and unpaid during the period mentioned, that the tendered voucher had attached to it a condition beyond the requirement of the statute, to wit, a condition that the payment was 'final', that there was no legal tender of the payment by the defendant during the period in dispute and that the record is replete with indications of plaintiff's objections to the form of the purported tender." In support of its position, appellant cites Hersey Gravel Co. v. State of Michigan, 1943, 305 Mich. 333, 9 N.W.2d 567, 173 A.L.R. 302, and State of Washington ex rel. Strahorn v. Stout, 1906, 43 Wash. 501, 86 P. 848. The rule laid down in the Hersey case, as quoted in appellant's brief, is:

> "A highway contractor's acceptance of a payment of the contract price does not constitute a waiver of a claim for an alleged breach of implied warranty as to the character of the subsoil created by notations on the blueprints."

We have reviewed this case and find that it is inapposite. We find nothing in that case to suggest that the contractor, prior to receipt of final payment, was required to sign a voucher containing the language of the voucher in question. The question before the court was simply whether or not acceptance by the contractor of final payment constituted a waiver and barred further recovery. The Washington ex rel. Strahorn case is cited in support of the proposition that interest cannot accrue against a municipal corporation until a warrant has been issued, presented for payment, and payment has been refused. This case bears no resemblance to the case before us. In that case a warrant holder sought by way of mandamus to compel the city treasurer to pay the face value of warrants plus interest at ten per cent per annum. A city ordinance provided for interest at ten per cent annually on all presented but unpaid warrants. On presentation of the warrants the city offered to pay the principal amount, but refused to pay the interest, contending the city ordinance was beyond the powers of the city council to enact. Both the lower court and the Supreme Court of Washington held that the enactment of the ordinance was within the power of the city council, and the mandate to compel payment of principal and interest was issued. The question as to the right to interest prior to the issuance of the warrant was in no wise involved in such case. If the appellant's position on this point were the law, namely, that interest does not commence to run on a claim which is admittedly due and owing by a municipal corporation until the issuance and presentment for payment of a warrant, a municipal corporation might be tempted to save interest by refusing to issue a warrant until compelled to do so by a writ of mandamus. We pass without comment the inconsistent positions taken by appellant as they relate to the problem under discussion.[3]

---

3. In seeking to reverse the judgment based on the jury verdict, appellant urges that the recovery must be disallowed because the claim of appellee was in the nature of contract extras, and that the contract provisions relating to extras were controlling, and that since such contract provisions were not followed, the judgment

242

On this phase of this appeal we hold that the trial court did not err in adjudging and decreeing in the supplemental judgment that the appellee recover from appellant interest at the legal rate on the sum of $50,186.40 from March 19, 1956 until paid.

We now proceed to consider appellant's appeal from the judgment based on the jury verdict. In 1954 appellant decided to construct an industrial site fronting on the lake which had just been formed by the newly constructed McNary Dam on the Columbia River. To this end, appellant engaged the services of an engineering firm in Portland, Oregon, to draft plans. The site of the flooded town of Attalia, Washington, was chosen for the development, said site being in appellant's jurisdiction under Washington law. The plans and specifications for the "Attalia Industrial Site Improvement" were completed in July of 1954, and the district then advertised for bids for the construction site. The proposed improvement consisted of a comprehensive development plan, requiring dredging of a barge channel, turning basin and mooring dock, construction of the dock, including fender piles, and filling and leveling behind the dock to form a level area for the proposed industrial site. To support the new land level, the plans called for a bulkhead of steel sheet piles for a distance of 1850 feet, and the use of riprap along the remaining area adjacent to the water level. On July 26, 1954, appellee learned of the advertisement for bids. Appellee was a graduate civil engineer, who had had experience in river and harbor improvements. On August 2, 1954, he obtained a copy of the plans and specifications from the consulting engineer of appellant. He studied the plans and specifications, made a trip to the site to be improved, and inquired from certain local residents as to subsoil conditions likely to be encountered. He again visited the consulting engineer to ascertain what further information he might have as to the subsoil conditions in the area to be dredged. He at that time specifically requested a copy of the Dames and Moore report, a report submitted by a firm of soil engineers, giving information about the soil conditions and the borings made, which are shown on the general plan. Appellee was advised by the consulting engineer that the Dames and Moore report was not readily available, but that it did not provide any additional information that would be helpful, and that it was all essentially on the plans, and that he had no further knowledge that would be helpful to appellee in submitting a bid. Upon bid opening appellee was the low bidder, but since his bid was beyond the budget of the appellant, certain specifications had to be rewritten to limit the cost of the project. Thereafter, appellee visited the site project on two occasions, once in the company of the consulting engineer. Subsequently a modified contract was signed on September 1, 1954. Shortly after appellee commenced performance of the contract he encountered difficulty in dredging operations because of the presence of cobbles and boulders,[4] and other material consisting of an asphalt paved roadway running through the area to be dredged, trees, telephone poles which had been cut off below water level, fence posts, wire, etcetera. Appellee notified the appellant of the difficulties being encountered by the presence in the area being dredged of such materials and obstacles, stating that in

based on the jury verdict must be reversed. On the issue of the allowance of interest, appellant urges that the judgment based on the jury verdict was a recovery *outside* the contract, and not within the contract provisions relating to extras, and that, therefore, acceptance of the final *contract* payment under the rule laid down in the Hersey case would not bar the recovery of damages *outside* the contract.

4. It was agreed between the parties that in common engineering parlance a rock smaller than 2½ inches in diameter is classified as "gravel", and rocks between 2½ inches and 10 inches in diameter are classified as "cobbles", and rocks over 10 inches in diameter are classified as "boulders".

the view of appellee such materials and obstacles were of a substantially different character than indicated in the specifications. He further stated that he did not consider such materials and obstacles to be miscellaneous debris. He further stated that the presence of such materials and obstacles had resulted in considerable lost time in dredging and had resulted in breakdowns of the dredge with resultant additional loss of time. He further stated that he was compelled to make claim for extra costs thus incurred, and requested the suggestions of appellant as to the means of providing for equitable adjustment under Article 7 of the standard conditions of the contract. In the meantime he stated that he would maintain a record of lost time and increased cost to be incurred in the dredging operations due to the conditions above mentioned. Prior to complete performance of the contract appellee endeavored to reach some agreement with the appellant relative to an additional allowance for the extra cost incurred by appellee by reason of the presence of such materials and obstacles. Meetings were held between the appellant and appellee relating to the extra cost, but no agreement was ever reached.

In the claim submitted by appellee to appellant for extra cost incurred by appellee because of the presence of rocks, boulders and other materials, which he claimed were substantially different from the materials as described in the specifications, the presence of which he could not reasonably have anticipated, he computed that the extra cost due to the described conditions totaled the sum of $53,472.91. In the complaint filed by appellee against appellant he claimed damages in such amount. At the trial appellee allocated approximately $6,000 of such added cost to the presence of the asphalt paved roadway, trees, fence posts, etc., and the balance of approximately $47,500 to the presence of rocks and boulders. The jury found that appellee was not entitled to recover any sum on account of the presence of the asphalt paved roadway, trees, fences, etc., but that appellee had suffered damage in the sum of $33,920 on account of the presence of rocks and boulders.

The construction contract consisted of the so-called standard contract provisions, the engineering specifications, and general plan. The pertinent extracts therefrom are as follows: Under engineering specifications the contract contains the following information relative to "Material to Be Dredged"

"A. The material to be removed within the areas shown for dredging and side slopes of one on four—therefrom is anticipated to be sand, silt and fine gravel. Bidders are expected to examine the site of the work and to study the records of three churn drill holes located on the drawings, (and the Dames & Moore Report on same) and information available in the office of the Engineer from information furnished by the U. S. Engineer's Office. The bidders shall decide for themselves the character of the material and assume all responsibility for conclusions drawn from these data the responsibility for the accuracy of these data is not assured by the Port of Walla Walla or their Engineers.

"B. Except as noted in Paragraph 'C' below, if materials or obstacles of a substantially different character are encountered in the execution of the dredging work and the cost of their removal or satisfactory treatment would be, in the opinion of the Owner, in excess of the contract prices, the Owner will then proceed in accordance with the provisions of the Standard Conditions, Article 7 of this contract.

"C. Miscellaneous debris consisting of metal, concrete, wood or other foreign material that may be encountered during dredging operations shall be removed by the Contractor at his expense, the cost of removal shall be considered as incidental to and included in the contract prices."

Under special provisions the contract contains the following information relative to "Physical Data":

"A. The sub-surface material in the area of the grading, filling, and dredging has not been explored beyond the three drill holes shown on the plans. Materials which may be encountered in the grading or dredging operation is not warranted as being a specific type or kind by the Owner and any claim for extras made by the Contractor as a result of encountering materials not anticipated will be judged on the basis of the statements contained in Section 1 of the Engineering Specifications contained herein and any adjustment will be made in accordance with the provisions of the Agreement and the Standard Conditions contained in this contract.

"B. Any information furnished herein or obtained by any authorized or unauthorized person (or persons) connected with the Walla Walla Port District, or this project is for information only. It is expressly understood that the Owner will not be responsible for the accuracy thereof or for deductions, interpretations or conclusions drawn therefrom by the Contractor."

Under standard conditions, the contract contains the following provision under the heading "Compensation for Extra or Additional Work":

"If the Contractor should claim that any instruction, request, drawings, specifications, action, condition, omission, default, or other situation obligates or may obligate the Owner to pay additional compensation to the Contractor * * *, he shall notify the Owner in writing of such claim within 10 days from the date he has actual or constructive notice of the factual basis supporting the claim * * *. If such notice be given in appropriate time, the procedure for its consideration shall be as stated above in this Article."

The pertinent provisions in said article are:

"(a) By an acceptable lump-sum proposal from the Contractor.

"(b) By unit prices contained in the Contractor's proposal and incorporated in this contract, or fixed by subsequent agreement between the Owner and the Contractor.

"(c) By a cost method pursuant to which the Contractor shall be paid the cost of the change or addition. He shall be required to keep and present in such form as the Owner may direct, a correct account of the cost of the change or addition together with all vouchers therefor. The cost may include an allowance for overhead and profit not to exceed 15% of the net cost."

Before considering appellant's specifications of error, we should review the situation as it existed at the time of the submission by appellee of his bid. In doing so we will, as we must, take that view of the evidence most favorable to the appellee.

Section 1 of the Engineering Specifications states that the material to be dredged is "anticipated to be sand, silt and fine gravel." Bidders were expected to examine the site, to study three churn drill holes located on the drawings and the Dames and Moore report on the same, and information available in the office of the engineer of appellant from information furnished by the United States Engineer's Office. The bidders were told to decide for themselves the character of the material and assume responsibility for conclusions drawn. The accuracy of the data was not assured by appellant. Such materials to be encountered in the dredging operation were not warranted as being a specific type or kind by appellant, and any claim for extras made by the contractor as a result of encountering materials not anticipated would be judged on the basis of statements contained in Section 1 of the engineering specifications, and any adjustment would be made in accordance with the provisions of the contract.

It is conceded by appellant that the drill holes and the Dames and Moore report disclosed the presence of gravel, but not the presence of rocks and boulders. It is likewise conceded by the appellant that there was not furnished to appellee information available to the office of the consulting engineer of appellant furnished by the United States Engineer's Office, although appellee specifically requested of the consulting engineer such knowledge or information possessed by him which would be helpful to appellee in the preparation of his bid. Appellee, who had had long experience in river and harbor dredging, studied the plans and specifications, made a trip to the site, inquired of local residents as to the subsoil conditions likely to be encountered, and requested of the consulting engineer of appellant as to any further information or knowledge he might have as to subsoil conditions. Appellee was informed that all information was essentially on the plans and that he had no further knowledge that would be helpful to appellee. Our review of the record satisfies us that there was sufficient evidence upon which the jury could reasonably find:

(1) That there was also in the area to be dredged boulders and rocks in substantial quantities;

(2) That the presence of boulders and rocks in substantial quantities was known to the consulting engineer of appellant at the time the specifications were drawn;

(3) That such engineer had in his possession certain information supplied by the United States Engineer's Office concerning the presence of basalt or lava rock which would be helpful to a prospective bidder;

(4) That such engineer failed to disclose to appellant his knowledge and information relating to the presence of rocks and boulders although specifically requested by appellee to divulge to him any further knowledge or information as to subsoil conditions which might be helpful to appellee in preparing his bid; and

(5) That appellant was aware of the type of equipment proposed to be used in the dredging operations, consisting of a ten-inch hydraulic dredge constructed on the hull, and designed primarily to dredge sand, silt and gravel, and only incidentally other material and offered no objections thereto.

It is the position of appellant that the disclaimer provision of the contract placed upon appellee the duty to thoroughly and completely investigate the subsoil conditions, and if such investigation failed to reveal conditions which were subsequently encountered the extra cost resulting therefrom as a matter of law must be borne by the appellee and not the appellant. In support of its position appellant relies upon quotations from text writers to the general effect that if plans and estimates are honestly furnished, the contractor must investigate matters for himself, and if he does not do so but makes his bid upon the basis of such plans and estimates he cannot recover for additional expenses because the proximate cause of his loss under such circumstances is his own carelessness or negligence in relying upon the plans and estimates; and upon the case of Maryland Casualty Co. v. City of Seattle, 1941, 9 Wash.2d 666, 116 P.2d 280. In the latter case the court concluded that the contract did not contain any representation or implied warranty as to underground conditions and that the specifications were not misleading or defective. It appears in that case that there had been no test drilling or other exploratory excavation in the area and subterranean conditions were unknown to both the contracting parties. Consequently there is nothing in the case to indicate any withholding of or failure to disclose knowledge or information concerning subterranean conditions which was in the possession of the contractee. In the instant case, there is the element of superior knowledge on the part of the appellant as to subsoil conditions, and the failure to disclose such knowledge or the means of knowledge to the appellee.

In seeking to sustain the judgment, appellee's position is that the withholding of or failure to disclose by the appellant of knowledge and information in its possession concerning the subsoil conditions which resulted in extra costs to appellee constitutes an actionable basis for his claim for damages. Appellee relies on the cases of United States v. Atlantic Dredging Co., 1920, 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; Christie v. United States, 1915, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933, and Hersey Gravel Co. v. State, 1943, 305 Mich. 333, 9 N.W.2d 567, 173 A.L.R. 302.

It is appellee's position that at the time of the issuance of the engineering specifications and during the bid period appellant had knowledge and information that in the area to be dredged there existed not only the sand, silt and gravel referred to in the engineering specifications, but that appellant also had knowledge or information that there also existed cobbles and boulders in substantial quantities; that appellant failed to disclose such information concerning the presence of cobbles and boulders after inquiry had been made by appellee which reasonably called for such disclosure; that such failure to disclose the knowledge and information concerning the presence of cobbles and boulders constituted a representation that the material to be dredged consisted of sand, silt and gravel; that a reasonable inspection, examination and investigation by appellee failed to disclose the presence of cobbles and boulders, but on the contrary reasonably led him to believe that such representation was true and was a representation upon which appellee was reasonably entitled to rely in the execution of the construction contract; that in the course of the performance of the contract appellee encountered cobbles and boulders in substantial quantities during the dredging operations, which resulted in extra and unanticipated costs to appellee; that such extra costs were proximately caused by the breach of appellant's implied obligation to make disclosure to appellee of the presence in substantial quantities of such cobbles and boulders, and that, therefore, the burden of such extra costs must fall on the appellant and not the appellee.

█ It is to be remembered that the appellee was the prevailing party before the district court; that all issues of fact were resolved by the jury adversely to the appellant; and that appellee is entitled to the benefit of all favorable inferences from the facts proved relative to the issue of liability. In our view, the record contains sufficient evidence to sustain all findings of fact which are implicit in the jury verdict. We have reviewed the instructions submitted to the jury by the district judge. They reveal that the jury was meticulously instructed upon the respective legal theories relied upon by the parties to the action. The instructions were unusually comprehensive, and as to the propriety of which no complaint is made on this appeal. The problem, therefore, before us is whether under the law of the State of Washington liability exists against a contractee under the factual situation existing in this case.

No decision of the reviewing court of the State of Washington has passed on the question of law presented by the factual situation in this case. However, the case of Maryland Casualty Co. v. City of Seattle, supra, while involving a different factual situation is strongly indicative. In that case a sewer contractor instituted an action against the City of Seattle for additional compensation because of the necessity for using compressed air in driving a portion of a tunnel, in connection with the installation of sewer lines. The contractor claimed to be entitled to recover the extra compensation on the ground that both parties contemplated the tunnel section would be a normal "free air" job; that certain provisions of the city's plans and specifications embodied in the contract constituted an implied warranty that it would not be necessary to resort to the compressed air method in excavating the tunnel; and that the plans and specifications were insufficient and

defective because it was physically impossible to do the work in accordance with the methods which they prescribed. The trial court on conflicting evidence held that the plans and specifications contained no implied warranty either as to ground conditions to be encountered or that the tunnel could be constructed without the use of compressed air. The Supreme Court held that the findings of the trial court should stand, the Supreme Court stating [9 Wash.2d 606, 116 P.2d 284]:

"Since we have concluded that the contract did not contain any representation or implied warranty as to underground conditions, or that the job was to be done in free air, and that the specifications were not misleading or defective, the principle of law upon which appellants rely clearly is not applicable."

The principle of law relied on by the appellants is that "where plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." In that case, as stated by the court, "There had been no test drilling or other exploratory excavation in this area, and subterranean conditions were unknown to both the contracting parties." As previously stated there is nothing in the case to indicate any withholding of or failure to disclose knowledge or information concerning subsoil conditions. The court, however, recognized the general principle of law urged by the appellants, and stated:

"The principle has been applied in numerous cases. Two typical and leading ones are Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898, and United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735. The Hollerbach case involved specifications which definitely stated that the dam, which was to be repaired, was backed by broken stone, sawdust and sediment. The backing, in fact, consisted of cribbing of sound logs filled with stones concealed beneath an upper layer of soft sediment. It was held that the contractors were entitled to recover for the additional cost of excavating this material, notwithstanding a clause of the specifications directing prospective bidders to inspect the locality of the work and to make their own estimates of the difficulties to be encountered.

"In the Atlantic Dredging Company case, it was likewise held that a contractor should have extra compensation to cover expenses incurred in reliance upon misleading representations in a government contract. There, the specifications stated that '"the material to be removed is believed to be mainly mud, or mud with an admixture of fine sand."' Bidders were admonished to '"examine the work, however, and decide for themselves as to its character * * * as the United States does not guarantee the accuracy of this description."' Bidders were also invited to inspect maps prepared by government officers showing the result of test borings in the area to be dredged. These maps did not disclose that, when the tests were made, in some instances the probe had struck impenetrable material. Furthermore, in accordance with a provision of the contract, the dredging equipment to be used by the contractor was examined and approved by a representative of the government. Hard and difficult materials were encountered, which could not be dredged with the contractor's equipment, although it would have been suitable for dredging mud and sand. The court held that the contractor was justified in acting upon the government's representation, even though they were expressed as a belief and were qualified as stated."

The Supreme Court of Washington impliedly approved the holdings in the Hollerbach and Atlantic Dredging Com-

pany cases as applied to the facts existing in those cases. It is to be noted that the factual situation in the Atlantic Dredging Company case is quite similar to the factual situation in the instant case.

Other cases which have applied the rule of law set forth in the Atlantic Dredging Company case are Christie v. United States, 1915, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933; Davis v. Commissioners of Sewerage, D.C.W.D.Ky. 1936, 13 F.Supp. 672, modified 6 Cir., 1937, 88 F.2d 797; and Ragonese v. United States, 1954, 128 Ct.Cl. 156, 120 F.Supp. 768, which sustain the right of a contractor to recover additional costs incurred as a result of the failure of the contractee to fully disclose the relevant subsoil conditions known to it. See also Valentini v. City of Adrian, 1956, 347 Mich. 530, 79 N.W.2d 885.

In our view the disclaimer provisions of the contract do not operate under the facts and circumstances of this case to prevent reliance by appellee on the implied representation of appellant that it had fully disclosed to appellee all relevant information and knowledge in its possession concerning subsoil conditions. United States v. Atlantic Dredging Co., supra; Christie v. United States, supra; Hersey Gravel Co. v. State, supra.

While appellant seeks to create a distinction between the situation existing at the time appellee submitted his bid and the situation existing after the contract had been executed, we believe that such distinction is without legal significance under the facts of this case.

■ We next turn to the question of damages. Appellant asserts that since the damages sought to be recovered are in the nature of "contract extras" and since the procedures set forth in the contract for determining how "extras" were to be computed were not followed there can be no recovery in this action for such damages. It is to be remembered that appellee notified appellant of his claim for extra compensation shortly after encountering the unanticipated materials. He stated that he was compelled to make claim for extra costs thus incurred, and requested the suggestion of appellant as to the means of providing for equitable adjustment under Article 7 of the standard provisions of the contract. He further stated that in the meantime he would maintain a record of lost time and increased costs to be incurred in the dredging operations due to the presence of unanticipated materials. It is also to be remembered that the only pertinent clause under the circumstances of this case for consideration of claims for extras required appellee "to keep and present in such form as the owner may direct, a correct account of the cost of the change or addition together with all vouchers therefor." Appellant did not recognize appellee's claim and failed to direct appellee as to the manner of keeping account of his extras so that an adjustment might be considered under such clause. Appellant is, therefore, in no position to claim that the contract provision for the adjustment of "extras" was not followed. It is also arguable that the damages sought by appellee are outside the contract in that the loss was occasioned by a breach by appellant of its obligation to make full disclosure under the facts and circumstances of this case. In any event, we consider appellant's contention to be without merit.

■ Appellant urges that there was a complete failure of proof of damages on behalf of appellee. We are satisfied that there is sufficient evidence in the record to show that the existence of cobbles and boulders in the material to be dredged greatly slowed down the dredging operation. Appellant did not attempt to prove that extra cost in dredging did not occur, but endeavored to show that only a small amount of rocks over $2\frac{1}{2}$ inches in diameter were actually excavated. This proof did not counter the existence of damage because the quantity of rocks removed was not used as a measure by appellee in computing damages. Many big rocks encountered were not dredged up. Their existence, however, required an elaborate procedure by which whatever subsoil there was under the rocks

had to be removed so that the rocks themselves, rather than being removed, would sink to below the level of the depth to be dredged. Since there is sufficient evidence to establish that the increased costs of the dredging were caused by the unanticipated conditions, the jury verdict was adverse to appellant's contention that the increased costs were the result of inefficient operation, weather conditions and other causes not related to the presence of cobbles and boulders.

 Finally we reach the major thrust of appellant's contention relating to damages, which is that the evidence was too speculative and conjectural, was based upon opinion and guessing, and was erroneously admitted, and that the verdict of the jury based thereon cannot stand. Appellee submitted the leverman's log. This log was kept by the man in charge of the dredge, known as the leverman. He kept a daily log of the operation of the dredge. This record covered the entire 24 hours of the day, and showed whether the dredge was operating, whether it was shut down, and the reason for being shut down. The appellee gave his opinion, based on his experience and observation, his analysis of the leverman's log, and his observation of the type of materials encountered, that the amount of extra cost directly occasioned by the presence of cobbles and boulders was the sum of $47,500. In our view, under the circumstances of this case, the court properly permitted appellee to express his opinion. There were other items of evidence before the jury bearing upon the subject of the extent of appellee's damage. The jury determined appellee's damage to be the sum of $33,920. In our view, this finding of the jury was not clearly erroneous. It is, of course, true that the extent of appellee's damage was not proved with mathematical certainty. Such certainty, however, is not required. It is a well recognized rule in the law of damages that uncertainty as to the amount of damages does not in itself bar recovery, where there is no uncertainty as to their existence or causation. See cases collected in 78 A.L.R. 858. This is the rule under the law of Washington. Gilmartin v. Stevens Inv. Co., 1953, 43 Wash.2d 289, 261 P.2d 73, adhered to on rehearing 1954, 266 P.2d 800; Wenzler & Ward Plumbing & Heating Co. v. Sellen, 1958, 53 Wash.2d 96, 330 P.2d 1068. It is to be remembered that the jury denied appellee some $6,000 extra cost occasioned by the presence of material found by the jury to be debris under the contract, and hence not the subject of extra compensation. It is also to be considered that the jury substantially reduced the remaining extra cost claimed by appellee. From the record in this case we are in no position to disturb the amount of the damages found by the jury to have been sustained by appellee. Other contentions by appellant not discussed herein are found to be without merit.

We hold that the court did not err in denying appellant's motion for directed verdict or in refusing to set aside the jury verdict and enter judgment for the appellant.

The judgments appealed from are and each of them is affirmed.