R. E. DAILEY & CO. *v.*
DEPARTMENT OF STATE HIGHWAYS

1. CONTRACTS—MEETING OF MINDS—WRITTEN INSTRUMENTS—TRUE INTENT.

   A writing is not a contract when it fails to express that on which the minds of the parties met; a mistake of expression occurs where the parties are of the same mind regarding the terms of the agreement but the writing intended to embrace those terms does not express their true meaning.

2. CONTRACTS — PARTIES' INTENT — WRITTEN INSTRUMENT — TRUE INTENT.

   Awarding plaintiff contractor damages for extra work done on welding a bridge, necessitated by the defendant's request that the welding method conform to the American Welding Society's specifications was proper even though the written contract between the parties provided that the society's specifications would be followed where the parties admitted that, at the time of contracting, they intended the general industry practice at that time to be followed, the industry practice was followed by the plaintiff with the defendant's approval, the society's specifications were changed while the work was being performed, and the new specifications were not the same as the trade custom at the time of contracting, because the contract requirement that the welding conform to the society's specifications did not express the intent of the parties and, thus, did not constitute their real contract.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 18 *et seq.*
[3] 45 Am Jur, Reformation of Instruments §§ 55, 56.
[4] 17 Am Jur 2d, Contracts § 282.
    28 Am Jur 2d, Estoppel and Waiver §§ 35, 76.
    Construction contractor's liability to contractee for defects or insufficiency of work attributable to the latter's plans and specifications.   6 ALR3d 1394.
[5–7] 41 Am Jur, Pleading §§ 335–343.

3. REFORMATION OF INSTRUMENTS—PARTIES' INTENT—TRUE INTENT —UNREQUESTED REFORMATION.

A written instrument may be reformed by a court to comply with the parties' intention even though neither party requested reformation; a judgment may confer only the final legal remedy, the preliminary equitable relief of reformation having been assumed as a prerequisite to the judgment.

4. CONTRACTS — CONSTRUCTION  ESTIMATES — RELIANCE — JUSTIFIED RELIANCE.

Reliance by plaintiff contractor on defendant builder's estimate of the amount of concrete necessary was justified even though the defendant's offer stated that its estimates were not guaranteed where the plaintiff had only a short time to prepare its bid and where there were several omissions and errors in the estimate the defendant prepared.

5. JUDGMENT—SUMMARY JUDGMENT—DISPUTED FACTS—CONTRACTS —BRIDGES.

Summary judgment was improperly granted to the plaintiff contractor where there was a factual dispute whether the damages to a newly-constructed bridge was caused by a heavy rainfall relieving the contractor of the duty to repair the bridge at its own expense, or by defective workmanship, imposing a duty on the contractor to repair the bridge.

6. JUDGMENT—SUMMARY JUDGMENT—DISPUTED FACTS—CONTRACTS.

Summary judgment was improperly granted to plaintiff contractor for payment of railroad-crossing flagging protections costs where the contract limited defendant's costs unless the costs were caused by building operations during an approved extension of time or by conditions beyond the contractor's control and where the defendant admitted contractual liability for some, but not all, of the costs.

7. JUDGMENT—SUMMARY JUDGMENT—DISPUTED FACTS.

Summary judgment was improperly granted where there were questions of facts whether the refusal of defendant's engineers to work for plaintiff contractor more than an eight-hour day constituted a strike within the meaning of the parties' contract and whether the engineers' refusal caused a delay entitling plaintiff contractor to additional compensation.

Appeal from the Court of Claims, William John Beer, J.  Submitted Division 2 January 6, 1971, at

Lansing. (Docket No. 8406.) Decided March 23, 1971. Leave to appeal denied June 18, 1971, 385 Mich 757.

Complaint by R. E. Dailey & Co. against the State Highway Department for breach of contract and for extra work. Summary judgment for plaintiff. Defendant appeals. Affirmed in part; reversed and remanded in part.

*Clark, Klein, Winter, Parsons & Prewitt* (by *Laurence M. Scoville, Jr.,* and *Robert G. Buydens*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso, James D. Mueller, Karl S. Vasiloff,* and *Thomas J. Giachino,* Assistants Attorney General, for defendant.

Before: QUINN, P. J., and BRONSON and O'HARA,[*] JJ.

BRONSON, J. Plaintiff and defendant entered into a contract for the purpose of constructing a highrise bridge, approximately three miles in length, over the Rouge River in Wayne County.

During the construction period certain disputes arose between the parties relating to the methods of attaching and suspending forms in which to pour and hold the concrete while it hardened (Count I); liability for a 2,169.3 cubic yard overrun in concrete (Count II); liability for the replacement of a damaged portion of the bridge (Count III); liability for the payment of sums required by the contract for

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the protection of railroad operations and crossings (Count IV); and liability for damages caused by delay resulting from an alleged "strike" of certain of defendant's employees (Count V).

Plaintiff filed a complaint containing the above counts with the Court of Claims.  Following receipt of defendant's answer, plaintiff moved for a summary judgment, alleging that no genuine issue of material fact existed and that plaintiff was entitled to prevail on each count as a matter of law.  Defendant filed written objections to plaintiff's motion on the grounds that while no material issue of fact existed as to Counts I and II, defendant, not plaintiff, was entitled to prevail as a matter of law on Counts I and II.  Defendant further contended that genuine issues of fact existed as to Counts III, IV, and V.  The Court of Claims granted plaintiff's motion for summary judgment on all five counts.  The amount of the judgment for plaintiff totaled over $581,000.  Defendant's motion to set aside the summary judgment and order a new trial was denied. Defendant appeals as of right.

Count I of the plaintiff's complaint alleged that plaintiff was entitled to $411,033 in additional compensation because plaintiff was required to perform "extra work" which was not included in the parties' contract.  Defendant does not question the monetary value placed on the work performed by plaintiff.  Rather, it is defendant's contention that the work was required by the contract and thus did not constitute "extra work" which would entitle the plaintiff to extra compensation.  Both plaintiff and defendant agreed no material dispute of fact exists with respect to the issue presented under Count I of plaintiff's complaint.

The issue of extra compensation arose with respect to the method to be employed in building

and suspending forms which hold the poured concrete while it hardens. The written document executed between the parties incorporated by reference the Michigan State Highway Department Standard Specifications (MSHD Specs). The MSHD Specs, in its section regarding electric arc welding, incorporated by reference the American Welding Society Specifications (AWS Specs) of 1963. Herein lies the problem.

It is admitted that at the time the written document was executed on May 19, 1965, it was the custom in the bridge construction industry in Michigan to attach the support form to the bridge by means of a certain welding process. It is further admitted that both parties, at the time the contract was executed, intended that existing custom be followed with respect to the welding process. The plaintiff submitted its bid and entered into the contract with the defendant intending that the general industry practice be followed with respect to welding procedures. The defendant, until March 1966, treated the welding process performed by plaintiff as being in compliance with the parties' contract. The defendant was aware that the practice of the industry was being followed, observed the welding, raised no objections to it, and considered the welding to be satisfactory and acceptable. However, apparently unknown to either party, the AWS Specs, which had been incorporated into the parties' written document, had been changed to require a new and different process of attaching the forms.

In March 1966, defendant was informed by the Federal government that the welding was not being performed in accordance with the AWS Specs. The defendant then informed plaintiff that the previously accepted method of welding the forms to the

permanent structural steel of the bridge had to be changed and that the welding would have to be performed in accordance with the AWS Specs. The new method, which admittedly was not within the intent of either the plaintiff or defendant at the time the parties executed the written document, required plaintiff to perform extra work. Plaintiff performed the work and promptly filed notice of its claim, alleging that defendant was liable for the work in the amount of $411,033. Plaintiff's claim in Count I did not request damages for rewelding, but merely for the extra work and expense required by the changed welding procedure.

Defendant, in the action below, did not challenge the value amount placed on plaintiff's services, nor did defendant contend that any factual controversy existed with respect to Count I. Rather, defendant contended that it, rather than plaintiff, should have been granted a summary judgment because the work performed by plaintiff had been required by the written document. That is, the work performed by plaintiff in welding the forms in accordance with the AWS Specs did not constitute extra work, but rather constituted work required by the express terms of the parties' written contract, which incorporated by reference the AWS Specs.

These uncontroverted facts present a situation in which the parties intended to enter into a contract for the construction of a bridge, but in which the written instrument, in part, varied from the intent of the parties. The variance was material and related to the welding procedure to be followed. As such, that portion of the written instrument requiring welding in accordance with the AWS Specs did not constitute the real contract of the parties because it did not express that on which the minds of the parties had met:

"A writing is not a contract when it fails to express that on which the minds of the parties met, and courts freely exercise the power to correct mistakes when the proof leaves no doubt that the real contract was something else. A mistake of expression occurs where the parties are of the same mind regarding the terms of the agreement, but the writing intended to embrace those terms does not express their true meaning. * * *" 17 CJS, Contracts, § 142, p 888.

Since the written document did not express the intention of the parties with respect to the welding procedure, and since both parties intended that the welding procedure would be done in accordance with the custom then used in the trade, the trial court could legally reform the instrument to comply with the parties' intent. The mere fact that neither party sought to have the written instrument reformed does not bar this remedy:

" * * * [I]n jurisdictions in which the distinctions between law and equity are abolished, or in which both forms of relief are administered by the same court, in an action at law upon an instrument *the court may in a proper case construe the contract as it was intended by the parties,* or supply matters omitted either by mutual mistake or fraud, *and render a proper judgment on the basis thereof, just as if there had been first a reformation of the contract. The judgment may confer only the final legal remedy, the preliminary equitable relief being assumed as a prerequisite, but not in terms awarded.* * * *" 45 Am Jur, Reformation of Instruments, § 11, pp 589, 590. (Emphasis added.)

The welding procedure used by the plaintiff until March 1966, was the same as that customarily used in the trade and the same as that intended by the parties when they entered into the contract. The

defendant approved this welding procedure until defendant was informed by the Federal government that welding had to be performed in accordance with the AWS Specs. Thus, the action of plaintiff in changing the welding procedure, upon defendant's request, to conform to the AWS Specs constituted a modification of the parties' original contract. Under the circumstances, plaintiff could reasonably expect to be compensated for the extra work necessitated by the modification. Since defendant does not contest the value placed upon the expenses incurred by the plaintiff in satisfying the AWS Specs, the trial judge properly granted plaintiff a summary judgment for the extra work in the amount of $411,033.

The second issue on appeal relates to Count II of plaintiff's complaint. The trial court granted plaintiff a summary judgment in the amount of $127,337-.91 for concrete overruns poured on the bridge superstructures. The superstructure is the concrete deck designed for vehicular travel built between supporting steel girders. Defendant again, in its answer to plaintiff's motion for summary judgment, admits that no genuine issue of fact exists, but contends that it, rather than plaintiff, is entitled to summary judgment as a matter of law.

It is defendant's contention that under the contract payment could be made only for the amount of concrete estimated, and not the amount of concrete poured. The uncontroverted facts establish that plaintiff, in preparing its bid, relied upon defendant's construction plan in which defendant's engineer estimated in the "plan quantity" that 35,712 cubic yards of concrete would be required to construct the superstructure. Plaintiff's bid included this estimate of 35,712 cubic yards and set a value amount of $58.70 per cubic yard of concrete. The

amount of concrete actually poured by plaintiff exceeded the estimate by 2,169.3 cubic yards.

It is not disputed that the defendant computed the amount of concrete that would be needed for the bridge, approved the manner in which the forms to hold the concrete were made, approved the forms which were used, directed changes to be made in the forms, determined the location of and directed the placing of the forms, determined the height or elevation of the forms, directed the time and manner of the pouring of the concrete, inspected the concrete, and controlled and directed the amount of concrete used. Despite these strict controls, it is conceded that the quantity of concrete required by the defendant and actually poured by the plaintiff exceeded the estimate by 2,169.3 cubic yards.

Defendant contends that because of the following language in the MSHD Specs, it is not liable for 2,169.3 cubic yards of concrete which were poured in excess of the estimated 35,712 cubic yards:

"Interpretation of estimates. The engineer's estimate of quantities as shown in the proposal shall be used for the comparison of bids upon which the award of the contract will be made. These quantities are not guaranteed, and the furnishing of this information creates no liability on the part of the state."

In our opinion, the record amply supports the trial court's disposition of this issue:

"1. Although section 1.02.02 of the defendant's standard specifications was an attempted disclaimer of liability for the furnishing of estimated plan quantities, it was ineffective because of the short time plaintiff was allowed to prepare its bid and because of the errors and omissions in the defendant's estimate. Accordingly, plaintiff's reliance on defendant's estimate was justified and defendant is

liable to plaintiff for all concrete furnished in excess of defendant's estimated plan quantity. *Hersey Gravel Co.* v. *State Highway Department* (1943), 305 Mich 333; *W. H. Knapp Co.* v. *State Highway Department* (1945), 311 Mich 186."

With respect to payment for concrete, the contract provided:

"Concrete bridge construction will be paid for at the *contract unit price per cubic yard* for the grade of concrete specified." (Emphasis added.)

Since the unit price for concrete is $58.70 per cubic yard and since it is admitted that plaintiff poured 2,169.3 cubic yards in addition to the "plan quantity" as determined by defendant, the trial court properly granted the plaintiff a summary judgment in the amount of $127,337.91.

Under Count III of plaintiff's complaint, it was alleged that defendant required plaintiff to replace a portion of the bridge because it was damaged. The contract provided:

"Until the final acceptance of the work by the engineer, as evidenced in writing, the contractor shall have the charge and care thereof and shall take every precaution against injury or damage to any part thereof by the action of the elements or from any other cause, whether arising from the execution or from the nonexecution of the work. The contractor shall rebuild, repair, restore, and make good all injuries or damages to any portion of the work occasioned by any of the above causes before final acceptance and shall bear the expense thereof, except damage to the work due to unforeseeable causes beyond the control of and without fault or negligence of the contractor, including but not restricted to acts of God, or of the public enemy, acts of the government, slides found by the engineer to have been unavoidable and ordinary wear and tear

on any section of the road opened to traffic by order of the engineer."

Defendant contended that the damage to the bridge was caused by defective workmanship, while plaintiff contended that the damage was caused by a heavy rainfall and that it was not required by the contract to replace it. Although the facts were disputed by both parties, the trial court granted the plaintiff a summary judgment in the sum of $17,849-.02.

Summary judgment may not be granted where a genuine issue of material fact exists. In considering a motion for summary judgment every well pleaded allegation of the opposing party is assumed to be true. *Bielski* v. *Wolverine Insurance Company* (1967), 379 Mich 280; *Beardsley* v. *R. J. Manning Company* (1966), 2 Mich App 172. In the instant case, defendant alleged that the span of bridge in question did not meet the required specifications. Since a material issue of fact was presented, the trial court improperly granted the plaintiff a summary judgment as to this count. GCR 1963, 117.3.

Plaintiff, in Count IV of its complaint, sought reimbursement from the defendant for $19,724.11, which plaintiff claimed to have paid for flagging protection at various railroad crossings during the construction of the bridge. The contract provided that all protection costs up to a specified amount were to be borne by defendant and that extra costs were to be paid by plaintiff "unless it is established that such excess costs are caused by operations of the contractor during an approved extension of time or by conditions beyond his control."

The record discloses that the plaintiff was inadvertently billed by the railroads for flagging protection costs and that plaintiff mistakenly paid the railroads the sum of $19,724.11. Defendant admits

some liability under the contract for the flagging costs, but contends that a fact question exists as to the actual amount the contract obligates the defendant to pay.  The trial court held no factual hearing to determine how much of the money which plaintiff mistakenly paid to the railroads was in fact owed by the defendant under the terms of the contract.  A fact question was presented as to the amount of excess costs which were "caused by operations of the contractor during an approved extension of time or by conditions beyond his control".  Since a fact question existed, the trial court erred in granting plaintiff a summary judgment on this count.  GCR 1963, 117.3; *Beardsley* v. *R. J. Manning Company, supra.*

Finally, defendant contends that the trial court erred by granting plaintiff a summary judgment in the amount of $5,498 for damages caused by delay from an alleged "strike" of defendant's employees.  Plaintiff contends that a delay which resulted in additional expenses was caused by the refusal of defendant's engineers to work more than eight hours a day.  It is plaintiff's contention that this refusal constituted a "strike" within the meaning of the contract and that plaintiff is entitled to extra compensation for damages caused by the delay.  Defendant denies these allegations in its answer.

We hold that a fact question was presented as to whether the refusal of defendant's engineers to work more than eight hours per day constituted a "strike", and if so, whether this refusal caused a delay for which the plaintiff is entitled to additional compensation.  The trial court erred by granting the plaintiff a summary judgment under Count V.

To summarize, based upon the pleadings, depositions, admissions, and documentary evidence pre-

sented, the trial court properly granted plaintiff's motion for a summary judgment as to Counts I and II. Counts III, IV, and V presented factual questions, and as such the trial court erred by granting plaintiff a summary judgment on these counts. No costs, neither party having prevailed in full.

All concurred.